THE ESSEX COUNTY PARK COMMISSION, A BODY POLITIC AND CORPORATE OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF ESSEX, A BODY POLITIC, *ET AL.*, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 21, 1959—Decided November 6, 1959.

94

Before Judges GOLDMANN, FREUND and HANEMAN.

Mr. *John J. McDonough* argued the cause for appellant (*Messrs. Darby & McDonough*, attorneys; *Mr. McDonough* and *Mr. William G. Wood,* of counsel).

Mr. *Nicholas T. Fernicola* argued the cause for respondents (*Mr. George H. Callahan,* of counsel).

The opinion of the court was delivered by

GOLDMANN, S. J. A. D. ▆ The sole question to be determined on this appeal is whether, under *N. J. S. A.* 40:37–15.1 (the Park Maintenance Act, as amended) the words "assessed valuation of the taxables and ratables of the county" mean the aggregate of the assessed valuations as determined by the local assessors or the equalized valuation as determined by the county board of taxation. Plaintiff contends the language means the latter; defendants argue it means the former. The Law Division held in favor of defendants.

Plaintiff Essex County Park Commission ("Commission") was created pursuant to *L.* 1895, *c.* 91; *N. J. S. A.* 40:37–96 to 174, "An Act to establish public parks in certain counties in this state, and to regulate the same." The act was adopted by the voters of Essex County at an election held in April 1895. The funds required by the Commission for the maintenance of the Essex County Park system are presently raised by and distributed to it by the County of Essex under provisions of *L.* 1952, *c.* 193; *N. J. S. A.* 40:37–15.1 (the Park Maintenance Act), which provides:

"The board of chosen freeholders in any county having a county park system and in which the provisions of sections 40:37–12 to 40:37–15 of Title 40 of the Revised Statutes are now or hereafter operative, shall annually, in ordering the amount of money to be raised for county purposes, declare the amount necessary to be raised for the purpose of maintaining the public parks and roads or parkways built in connection with the public park system of such county, which amount shall not be less than one-half of one mill on the dollar, nor more than one mill on the dollar of the *assessed valuation of the taxables and ratables of the county.*

If in any year the park commission shall certify to the board of chosen freeholders that an amount less than the minimum hereinbefore prescribed is needed for the maintenance of the park system during that year, and shall also certify the exact amount necessary to maintain the parks during that year, the board shall raise for that year the sum so certified by the park commission instead of the minimum hereinbefore prescribed.

This act shall remain inoperative in any county until adopted by a majority of the votes cast on the question of the adoption or rejection thereof at a general election. * * *

Upon this act being adopted in any such county, this act shall thereupon become operative therein, and the provisions of sections 40:37-14 and 40:37-15 of the Revised Statutes inconsistent herewith shall thereupon cease to be operative in such county; * * *."
(Italics ours.)

This statute was duly approved by a majority of the voters of Essex County at the general election held in November 1952.

The assessed valuation of the taxables and ratables of Essex County for the year 1958, after equalization and confirmation by the county tax board, was $3,708,184,175, subject to adjustments for 1958. Calculated at the minimum of one-half of one mill on the dollar, the sum required to be raised and distributed by the county to the Commission under *N. J. S. A.* 40:37-15.1 would be the sum of $1,854,092.09.

On December 17, 1958 the Commission adopted a resolution approving its budget for the year 1959 and requesting the freeholder board to include in the 1959 Essex County budget the net sum of $2,129,793.59 for maintenance of the county park system, pursuant to the Park Maintenance Act. The budget, together with a copy of the resolution, was transmitted to the freeholder board and filed with it on December 18, 1958.

On January 22, 1959 the freeholder board introduced and approved the county budget for the year 1959, appropriating therein the sum of $1,711,045 for county park maintenance purposes. This represented one mill on the dollar of the aggregate assessed valuations of all taxables and ratables totalling $1,711,045,000 as determined by the assessors of the various municipalities of Essex County. The appropriation, in the view of the freeholder board, represented the maximum discretionary amount it could allow under the statute. The statutory public hearing on the budget was called for February 9, 1959.

The Commission thereupon, by complaint and order to show cause filed January 27, 1959, brought an action in lieu of

prerogative writs (a) to compel the freeholder board to appropriate for county park maintenance purposes the requested sum of $1,854,092.09, as required by law, instead of the $1,711,045 provided in the county budget; and (b) to stay adoption of the county budget pending determination of the action, or in lieu thereof that provision be made for payment to the Commission of such additional funds as may be required by law. The order to show cause was returnable February 6, 1959. On January 30, 1959 an order was entered continuing the hearing on the order to show cause to February 20, 1959, a date beyond that fixed for the hearing on and adoption of the county budget. The order of continuance was granted upon the express condition that if the action were resolved in favor of the Commission and judgment entered thereon, and all of defendants' legal remedies were exhausted, defendants were promptly to appropriate and pay over to the Commission such additional sums as defendants were under a duty to pay. The county budget was adopted on February 9, 1959 without change in the park maintenance appropriation.

In its complaint the Commission contends that the freeholder board improperly used the aggregate of assessed valuations of ratables as established by the local assessors ($1,711,045,000) rather than the aggregate of the adjusted equalized valuations as set forth in the equalization table attached to the complaint ($3,708,184,175). The claim is that the freeholders should have calculated the mandatory minimum of one-half mill on the dollar on the basis of the latter figure, producing an appropriation of $1,854,092.09 (including adjustments)—a sum $143,047.09 in excess of the actual appropriation.

Both parties moved for summary judgment on the pleadings, exhibits and briefs, and the Law Division judge entered judgment for the defendants dismissing the complaint. This appeal followed.

The statute here in question, *N. J. S. A.* 40:37–15.1, provides for a mandatory minimum that the freeholder board

must give the plaintiff, namely, one-half of one mill on the dollar. It may in its discretion give up to one mill on the dollar. The dispute here is as to the basis on which the one-half to one mill is to be calculated. Plaintiff contends that "not less than one-half of one mill on the dollar, nor more than one mill on the dollar of the assessed valuation of the taxables and ratables of the county" means assessed valuation after equalization and confirmation by the Essex County Board of Taxation. Its contention, in effect, is that it was the legislative intent in adopting *N. J. S. A.* 40:37–15.1 to use the words "assessed valuation" as synonymous with "equalized valuation" or "true value."

The statute derives from *L.* 1951, *c.* 191, as amended by *L.* 1952, *c.* 193. The bills which became those laws (*Senate* 278 of the 1951 Legislature, and *Senate* 113 of the 1952 Legislature) carry no statement that would indicate just what the legislative intention was. In both laws we find the words "assessed valuation of the taxables and ratables of the county." *R. S.* 40:37–14 (*L.* 1902, *c.* 57), the statute under which the freeholder board made payments to the Commission prior to the 1952 Essex County referendum adopting the provisions of *N. J. S. A.* 40:37–15.1, contained, and still contains, the same language. The only significant difference between *N. J. S. A.* 40:37–15.1 and 40:37–14 is that the former, on a county option basis, increased the permissible maximum from "three-fourths of one mill" to "one mill on the dollar of the assessed valuation of the taxables and ratables of the county." These two sections of *Title* 40, *chapter* 37, of the *Revised Statutes,* relating to county parks, may also be compared with *N. J. S. A.* 40:37–101.1 (*L.* 1939, *c.* 133), under which plaintiff originally received funds prior to its adoption of the county option provided for in *R. S.* 40:37–14. In *N. J. S. A.* 40:37–101.1 the board of freeholders could appropriate for county park maintenance purposes a sum not exceeding "one-half of one mill on the dollar on the assessed valuation on the total ratables and taxables in said county."

The foregoing review of the statutes shows that the Legislature, despite all changes in the Park Maintenance Act, has consistently used the words "assessed valuation."

The Commission's argument that we construe "assessed valuation" in *N. J. S. A.* 40 :37–15.1 as equivalent to equalized value as determined by the equalization table adopted by the county tax board, is based on an analysis of the Tax Act, *N. J. S. A.* 54 :3–13, 17 and 19 and 54 :4–1, 23, 35, 47, 48 and 49. Plaintiff stresses the statutory mandate that all property in the State shall be subject to taxation annually "at its true value" (*N. J. S. A.* 54 :4–1) ; that the local assessors shall determine the "full and fair value" of each parcel of real property situate in the taxing district (*N. J. S. A.* 54 :4–23) ; and that each county tax board shall secure the taxation of all property in the county "at its true value" (*R. S.* 54 :3–13). We are referred to *Switz v. Middletown Township*, 23 *N. J.* 580 (1957), reaffirming the true value assessment of property within the State. Plaintiff then goes on to point out that the county tax board is under a duty annually to prepare an equalization table (*R. S.* 54 :3–17) ; and that after the equalization table is finally confirmed by the tax board, the valuations of real property in each district as equalized "shall be deemed to be the true valuation of such property in computing the total ratables of each district for all apportionment of county and state taxes, charges or distribution of monies." (*R. S.* 54 :3–19.) Attention is also called to *N. J. S. A.* 54 :4–47, empowering the county tax board, after investigation, to revise, correct and equalize the assessed value of all property in the respective taxing districts, and in general to do everything necessary for the taxation of all property in the county equally and at its true value; to *N. J. S. A.* 54 :4–48, which provides :

"The county board of taxation shall enter all changes or additions on the various tax lists and duplicates, and upon ascertaining the total amount of tax to be raised, fix and adjust the amount of State school, State and county tax to be levied in each taxing district in the county in proportion to the respective values thereof, and the

amount to be levied in each taxing district for local purposes as certified to it. The county board of taxation shall also apportion the amount to be levied in each taxing district for purposes of consolidated and regional school districts and school districts comprising 2 or more taxing districts. * * *"

and also to *N. J. S. A.* 54:4–49(*a*), which provides:

"Except as to any State tax at a fixed rate provided for in sections 54:4–50 and 54:4–51 of this Title, each county board of taxation, after having received the tax lists and duplicates of the assessors and having revised and corrected the same and having equalized the aggregate valuations of all the real property in the respective taxing districts, as required by sections 54:3–17 to 54:3–19 of the Revised Statutes, shall, after making adjustments for the debits and credits hereinafter mentioned, apportion the amount to be raised in the respective taxing districts for State, State school, county and free county library purposes and for purposes of regional and consolidated school districts and school districts comprising 2 or more taxing districts, on the basis of the total valuation so ascertained for each taxing district. The total valuation for each taxing district, so ascertained, shall be known as the 'apportionment valuation.' "

The argument of the Commission proceeds in this fashion: the intention of the Legislature is to be derived from a consideration of every part of the statute, taken and compared together. The legislative intention in adopting the park maintenance statutes should be considered in the light of the provisions of the Tax Act requiring all real property to be assessed at true value, or full and fair value, and so considered it is clear that the Legislature intended that the equalized values of real property should be used in determining the amount of park maintenance funds. Further, that such funds were and are an integral part of the county budget, and as such involve apportionment among the municipalities not only in the collection thereof but as well in their distribution to the Commission. In short, the Legislature, in providing for the equalization process, has given the words "assessed valuation" and "ratables," used in *N. J. S. A.* 40:37–15.1, a peculiar connotation and has made them words of art. They mean, in essence, ratables after equalization.

The existence of the equalization procedure may be traced from *R. S.* 54:3–17 to 19 back through *L.* 1934, *c.* 191; *L.* 1918, *c.* 236; *L.* 1906, *c.* 120; *L.* 1903, *c.* 208, *sec.* 21, and beyond. In tracing the history of equalization in New Jersey in *City of Passaic v. Passaic County Board of Taxation*, 18 *N. J.* 371, 382–383 (1955), our Supreme Court indicated that the equalization of aggregates method has been a feature of our tax laws for more than 150 years. Thus, at the time of the adoption of the earliest statute pertaining to county contributions to park commissions there had been for many years a recognition of the need for equalization. The Legislature was well aware that local tax assessors were not establishing assessed valuations at true value. Nonetheless, the Legislature continued to use the words "assessed valuation" from the time of the enactment of the first Park Maintenance Act, *L.* 1902, *c.* 57.

We are of the opinion that the words "assessed valuation" in *N. J. S. A.* 40:37–15.1, as in the 1902 statute now known as *R. S.* 40:37–14, as well as in *N. J. S. A.* 40:37–101.1, refer to the aggregate of assessed valuations as determined by the local municipal assessors. This conclusion is supported by a consideration of sections of the Tax Act relating to equalization. Thus, *R. S.* 54:3–17 requires each county board of taxation to "prepare an equalization table showing the *assessed valuation* of the real property in each district, the ratio or percentage, if any, by which the *assessed valuation* should be increased or decreased in order to correspond to *true value*, and the *true value* of the real property within the district as determined by it." (Italics ours.) There is legislative recognition here that "assessed valuation" and "true value" are not the same thing. *N. J. S. A.* 54:4–47 exhibits the same differentiation; as already mentioned, the county tax board is authorized, after investigation, to "equalize the *assessed value* of all property in the respective taxing districts, increase or decrease the *assessed value* of any property not *truly valued*, assess property omitted from any assessment, as provided by law, at its *true value*, and in

general do everything necessary for the taxation of all property in the county equally and at its *true value."* (Italics ours.)

■ The sole and fundamental purpose of equalization is the equitable apportionment of the amount to be raised in the respective taxing districts for state, state school, county and free county library purposes, and for purposes of regional and consolidated school districts and school districts comprising two or more taxing districts. In this way the Legislature established a method of eliminating the inequities which would exist were such costs apportioned on the basis of local assessed values, especially where (as here) a different ratio of true value was used by each assessor in the county. See *N. J. S. A.* 54:3–19, 54:4–48 and 54:4–49(a).

■■ The legislative purpose in enacting the equalization statutes was clearly to limit the use of the equalization table to apportionment situations. As the Law Division judge observed, the present case is not one of apportionment. Apportionment of the tax burden takes place only after the total amount of revenue that must be raised by the county has been determined. Then, and only then, is the tax burden apportioned among the several taxing districts according to the equalization table. Whether defendant freeholder board determined the amount which plaintiff Commission was to get on the basis of the total assessed valuations filed by the several local assessors, as it did, or on the basis of the equalized valuations in the several taxing districts of Essex County, there would in the end be a fair distribution of the county park maintenance costs among the municipalities. There would be an equitable apportionment of the tax burden, within the spirit of the equalization statutes, based on the equalized valuations found by the county tax board.

*Maplewood Township v. Essex County Board of Taxation,* 39 *N. J. Super.* 202 (*App. Div.* 1956), and *Berkeley Heights Township v. Board of Education, etc.,* 23 *N. J.* 276 (1957),

affirming 40 *N. J. Super.* 549 (*Law Div.* 1956), cited by plaintiff, do not support its position.

In the *Maplewood* case the Village of South Orange and the Township of Maplewood had established a common school district. The statute, *L.* 1904, *c.* 153, *sec.* 3, required that South Orange levy, assess and collect "such proportion of any monies appropriated or raised for school purposes within said district as the assessed valuation of said village shall bear to the valuation of the entire district." The county tax board apportioned the shares of the school district expenses between Maplewood and South Orange on the basis of equalized valuations, rather than on the original aggregates of assessed valuations contended for by Maplewood. We found that "assessed valuation" in the statute under consideration did not preclude those words from being construed as equivalent to equalized valuation as determined by *N. J. S. A.* 54:3–17. After stating that "assessed valuation" can have different meanings in different contexts, we clearly indicated that equalization is solely applicable to apportionment, and declared that

"The obvious intent of the 1904 statute was that each of the contending municipalities should bear that proportion of the common school district expense as is represented by the *true* or *actual* ratio of the value of the assessed property therein to the value of such property in both. The equalization process is contemplated by the legislature to achieve a closer approach to true ratios, within inevitable practical administrative limitations, than is possible by the use of autonomously fixed local assessment valuations. It is generally designed to serve the purpose of fair distribution of costs and revenues as between municipalities sharing common burdens. Thus, every consideration relevant to 'the general purpose the law was designed to achieve' points to the sense and legal propriety of the use of the equalized valuations in the present case. \* \* \*" 39 *N. J. Super.*, at *pages* 206–207)

The result of our decision was to divide the cost of maintaining the school district between South Orange and Maplewood on a proportionate basis, through the use of equalized valuations. That situation does not exist here. As we have

said, whatever amount the freeholder board may appropriate and pay to the Commission under the statute is reflected by a line item in the 1959 county budget, and this sum, like all other items in the budget, will be included in the county tax, to be paid by all municipalities of the county based upon equalized values.

In the *Berkeley Heights* case the township challenged the action of the board of education and the Union County Board of Taxation in apportioning current expenses and debt obligations of the school district among the participating members on the basis of the equalization table promulgated by the tax board in 1956. The statute, *N. J. S. A.* 18:8–17, as it then stood prior to amendment by *L.* 1956, *c.* 95, required the regional board of education to apportion the approved appropriation "upon the basis of the ratables of the constituent school districts," and thereafter to certify the statement to the county tax board. The regional board apportioned the appropriation upon the aggregate valuation of ratables determined by the local assessors, as reported to the tax board by each of the participating members for 1955. The tax board requested the regional board to compute the apportionment on the basis of the equalized valuation of ratables, and this was done. Berkeley Heights contended that the apportionment so made was improper, not only in the light of the applicable statute and alleged prior custom, but also in view of time limitations. The court construed "ratables" to mean equalized values, to the end of achieving a just and equitable result, holding that "Apportionment of expense of a joint school endeavor upon the basis of the local assessor's aggregate valuation would disregard the concept of equality quite as much as distribution of county government expenses in similar manner." (23 *N. J.*, at *page* 282) The prior practice of a few local officials stemming from the construction of a general law was held to carry little weight, especially where their interpretation ignored the purpose and method of distributing the burdens of governmental operations.

The *Berkeley Heights* case, like the *Maplewood* case, was one involving apportionment. No problem of apportionment or equality of tax burden concerns us in this action. The amount appropriated is to be paid to plaintiff, and so there is not involved the question of apportionment between it and some other body or bodies.

That the sole purpose of equalization is the apportionment to each taxing district of its fair share of the county tax burden was made clear in another context in *Totowa v. Passaic County Board of Taxation,* 5 *N. J.* 454, 463 (1950). And see *City of Passaic v. Passaic County Board of Taxation,* above, 18 *N. J.,* at *page* 377; 3 *Cooley on Taxation* (*4th ed.* 1924), § 1195, *p.* 2390.

As counsel for the freeholder board points out, counties and municipalities, in the determination of their debt limit, are likewise limited to a percentage of "assessed valuations." *R. S.* 40:1–82(5). Were "assessed valuation" to be defined in the manner for which plaintiff contends, the theoretical result would be that the present debt limits of counties and municipalities would be increased by as much as 200% or 300%, with an accompanying invitation to increases in local debt limits throughout the State.

We also agree with defendants that it is not a basis for construing *N. J. S. A.* 40:37–15.1 in the manner requested by plaintiff that had the municipal assessors assessed property in their respective taxing districts at true value, as required by *Switz v. Middletown Township,* above, 23 *N. J.* 580 (1957), the Commission would have been entitled to more money. The argument begs the question. Had the assessors assessed at true value, then this would be one of the statutes that the court in *Switz* (23 *N. J.,* at *page* 598) recognized would have to be amended. In such case the Legislature could reduce the fraction of one-half of one mill to something less.

An example of such legislative recognition is found in the 1957 amendment to *N. J. S. A.* 40:33–9, the Free County

Libraries Act. Prior to April 3, 1957 that section of the act provided:

"There shall be annually assessed, levied and collected in the same manner as other county taxes, by the board of chosen freeholders from the municipalities of counties receiving the benefits of this article, a sum sufficient for the establishment and thereafter for the maintenance of the library. The sum so raised shall *not be less than 1/5 of a mill on all the real and personal property* of the municipalities receiving the benefits of this article." (Italics ours.)

*L.* 1957, *c.* 14, the result of Assembly Bill No. 367 of the 1957 Legislature, amended the statute to read as follows:

"Upon the adoption of the provisions of this article, the board of chosen freeholders shall determine a sum sufficient for the establishment and, annually thereafter, for the maintenance of the library. The sum so to be raised shall be certified by the board of chosen freeholders to the county board of taxation, which shall apportion such amount among the municipalities receiving the benefits of this article in accordance with the provisions of section 54:4–49 of the Revised Statutes. The sum so raised shall be *not less than 1/15 of a mill per dollar on the 'apportionment valuation,' as defined in section 54:4–49 of the Revised Statutes,* of the municipalities receiving the benefits of this article. The amount thus apportioned to each municipality shall be assessed, levied and collected in the same manner and at the same time as other county taxes are assessed, levied and collected therein." (Italics ours.)

Thus, the Legislature, faced with an apportionment problem, tied in the equalization table theory found in *N. J. S. A.* 54:4–49 and then reduced the mandatory minimum from an original one-fifth of a mill to one-fifteenth.

The Statement accompanying *Assembly* 367 reads:

"This bill has two purposes. First, to require the apportionment of the cost of free county library services on the same basis as is now employed for the apportionment of the cost of county government and the cost of joint, regional and consolidated school districts. Second, to change the minimum amount to be raised from 1/5 of a mill per dollar on all real and personal property of the municipalities sharing the services to a minimum of not less than 1/15 of a mill per dollar on the 'apportionment valuation' of the beneficiary municipalities.

> Inasmuch as the minimum, under this bill, would be computed on the basis of equalized valuations, it is necessary to reduce the minimum rate since the present rate would make mandatory the raising of sums far in excess of present budgets."

This is a clear legislative acknowledgment that under the prior statute, where the language was "1/5 of a mill on all the real and personal property of the municipalities," the formula was based upon assessed valuation. That construction was recognized notwithstanding that the language was not nearly as clear as in this case, namely, "the assessed valuation of the taxables and ratables of the county."

There is one further observation that might be made in connection with plaintiff's argument that the county tax board should have used the equalized valuation figure as a basis for its appropriation to the Commission. Under the Local Budget Law, the county budget must be adopted not later than the 55th day after the beginning of the budget year. *N. J. S. A.* 40:2–10. This fixes February 24 as the date of final action. *R. S.* 54:3–18 requires that the county tax board meet annually on January 25 for the purpose of equalizing real property assessments between the several taxing districts of the county; that it afford the local assessors a hearing to determine the accuracy of the ratios and true valuations shown in the equalization table; and that the equalization be completed before March 10. It is entirely probable that the equalization process would not have been completed by the time the county budget must be adopted, with the result that there would be no equalization figure on which to base a budget appropriation. The statutory time schedules for budget and equalization action thus militate against plaintiff's argument.

We therefore conclude that the action of the freeholder board in using the aggregate of the local assessments to arrive at the amount to be paid to the Commission for county park maintenance purposes, was proper under *N. J. S. A.* 40:37–15.1.

The judgment is affirmed.