72 N.J. Super. 7 (1962)
177 A.2d 580
VICTOR GUALANO, JOSEPH DEL VECCHIO, MIRIAM MICALI AND BERNARD ROSENFELD, PLAINTIFFS,
v.
BOARD OF SCHOOL ESTIMATE OF THE ELIZABETH SCHOOL DISTRICT AND THE CITY OF ELIZABETH IN THE COUNTY OF UNION, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 15, 1962.
*10 Mr. Jerome C. Eisenberg for plaintiffs (Messrs. Clapp and Eisenberg, attorneys).
Mr. Raymond A. Leahy, Assistant City Attorney, for defendants (Mr. John L. Ard, City Attorney, attorney).
Mr. Joseph G. Barbieri for the Board of Education  amicus curiae.
FELLER, J.S.C.
This is an action in lieu of prerogative writs.
Plaintiffs contend that they are teachers under tenure, employed by the Elizabeth Board of Education; that on or about January 12, 1961 the board of education estimated the amount necessary for the school year beginning July 1, 1961 and ending June 30, 1962, which amount was $6,408,248.71; that included in said budget were increases and increments for the teachers  including the plaintiffs; that on January 13, 1961 the board of education, pursuant to N.J.S.A. 18:6-49, prepared and delivered copies of said budget to each member of the board of school estimate; that on February 14, 1961 the board of school estimate, pursuant to N.J.S.A. 18:6-50, fixed and determined the amount of money necessary to be appropriated for the use *11 of the public schools in Elizabeth for the school year 1961-1962 at the sum of $6,308,248.71; that further pursuant to N.J.S.A. 18:6-50 the board of school estimate made two certificates of said amount and delivered one copy to the school board and one copy to the City of Elizabeth on February 15, 1961; that R.S. 18:6-53 makes it mandatory that the city shall, upon receipt of the said certificate, appropriate the amount certified to it by the board of school estimate by including it in the tax ordinance, and that such amount shall be assessed, levied and collected in the same manner as money appropriated by the city for other purposes is assessed, levied and collected.
Plaintiffs further contend that on February 28, 1961 the city council voted not to appropriate the amount certified to it by the board of school estimate upon the belief that the amount so certified to it by the board of school estimate exceeded 1 1/2% of the "assessed ratables" of the City of Elizabeth; that the statute, R.S. 18:6-53, provides that no amount in excess of 1 1/2% of the "assessable ratables" of any municipality, as determined by the county board of taxation, shall be appropriated without the concurrence and consent of the governing body; that the Union County Board of Taxation had fixed $433,817,887 as the valuation of the "assessable ratables" of the City of Elizabeth for 1961, and that the amount of $6,308,248.71, as certified to by the board of school estimate, is an amount less than 1 1/2%, and that the defendant City of Elizabeth had no authority to refuse to appropriate the said sum of $6,308,248.71; that on March 28, 1961 the board of school estimate certified to the city council that the sum of $6,147,730.86 was necessary for the school year beginning July 1, 1961, and on March 28, 1961 the city council concurred and consented to said amount; that as the result of the refusal of the City of Elizabeth to appropriate the said amount of $6,308,248.71 and as the result of the appropriation of the reduced amount of $6,147,730.86 the plaintiffs will suffer financial losses.
*12 Thus, plaintiffs demand judgment as follows:
"(a) directing the defendant City to appropriate the sum of $6,308,248.71, being the amount certified to it by the Board of School Estimate for the school year 1961-1962, and forthwith to include such amount in the City's tax ordinance, and
(b) declaring that the language used in R.S. 18:6-53, that the `valuation of the assessable ratables * * * as determined by the county board of taxation' refers to the valuation of $433,817,887 as determined by the Union County Board of Taxation as the base upon which the one and one-half per centum limitation shall be computed."
The defendants admit most of the facts alleged by plaintiffs but deny the interpretation of R.S. 18:6-53 as contended for by plaintiffs, and deny that the actions of defendants were in violation of said statutes, and further deny that the City of Elizabeth has no authority to refuse to appropriate the sum of $6,308,248.71. Defendants also contend that they had no knowledge or information concerning the tenure status and losses claimed by plaintiffs, but this has been established by affidavits of plaintiffs, the contents of which have not been denied. Defendants also set up a number of separate defenses.
Plaintiffs move for summary judgment to compel the defendant City of Elizabeth to appropriate for school purposes the sum of $6,308,248.71, which is the amount certified to it by the board of school estimate for the year commencing July 1, 1961, and for the interpretation and construction of R.S. 18:6-53.
Defendants have filed a cross-motion for summary judgment based upon the allegations of the complaint, and for the interpretation and construction of R.S. 18:6-53.

I.
In a separate defense defendants assert that the plaintiffs are required to exhaust their administrative remedies before making application to this court. Any failure *13 to exhaust administrative remedies is no bar to the plaintiffs' right to bring this action.
There is no question that R.R. 4:88-14 provides that, in the usual case, administrative remedies are to be exhausted before a proceeding is to be started in lieu of prerogative writs. This rule provides as follows:
"Except where it is manifest that the interests of justice require otherwise, proceedings under Rule 4:88 shall not be maintainable, so long as there is available judicial review to a county court or inferior tribunal or administrative review to an administrative agency or tribunal, which has not been exhausted."
It will be noted at the outset that the rule is not absolute by its very terms. The rule was intended as a simple rule of ordinary procedure. Ward v. Keenan, 3 N.J. 298 (1949). The rule has constantly been departed from where the interests of justice require. Reference may be had to Waldor v. Untermann, 10 N.J. Super. 188 (App. Div. 1950), which was an action for the ouster of the defendant as a member of the Board of Education of the City of Newark. Justice (then Judge) Jacobs, in discussing this rule, relied on a school case in part when he said, at page 191, regarding the rule:
"However, it was neither jurisdictional nor absolute and was departed from where, in the opinion of the court, the interests of justice so required. See Lane v. Bigelow, 135 N.J.L. 195, 200 (E. & A. 1947); Conaway v. Atlantic City, 107 N.J.L. 404, 408 (Sup. Ct. 1931); Koven v. Stanley, 84 N.J.L. 446, 447 (Sup. Ct. 1913). In the Lane case the Court of Errors and Appeals permitted judicial determination without exhaustion of the administrative remedy available under the Zoning act and adopted the postion taken earlier in the Conaway case that the court had `power to intervene, and in a proper case will intervene, without waiting for intermediate statutory remedies to be exhausted.' In the Koven case the court entertained a quo warranto proceeding to determine the title to office of members of a school board without awaiting determination of the double appeal to the Commissioner and the State Board of Education. After expressing his thought that the administrative tribunals could not take dispositive action on the issue presented Justice Swayze said: `I think it clear that where so important a question as the title of *14 members of a school board to their office is involved, a proper exercise of discretion permits, if it does not require, the speedy adoption of the only final and effective procedure to determine the question.'"
The court, in Waldor, allowed the matter to proceed even though the plaintiff had not exhausted his administrative remedies because (as indicated at page 193) "* * * the matter was of importance to the community and expeditious determination was directly in the public interest." The court also concluded (at page 192) that the matter "* * * did not involve any questions of administrative policy, discretion or judgment." Similarly, this matter is of extreme importance to all connected with the City of Elizabeth, and expeditious determination is imperative, particularly where, as here, the budget and the tax ordinance are affected. Moreover, the questions involved do not concern any administrative policy, discretion or judgment.
In Nolan v. Fitzpatrick, 9 N.J. 477 (1952), the situation was somewhat analogous to that presented here. In the case at bar, the plaintiffs are seeking a determination compelling the City of Elizabeth to make an appropriation certified to it by the board of school estimate. In the Nolan case certain members of the Boulevard Commissioners of the County of Hudson brought an action in lieu of prerogative writs to compel the Board of Chosen Freeholders of the County of Hudson to raise a certain amount certified to such board of chosen freeholders by the boulevard commissioners. The court ultimately held that the defendant board was to appropriate immediately the funds requisitioned by the plaintiff commissioners. Regarding the contention that the plaintiffs had not exhausted their administrative remedies, the late Chief Justice Vanderbilt, speaking for the court, said as follows (at pages 486-487):
"* * * On the contrary, whenever the rule of exhaustion of remedies is asserted as a defense in a proceeding in lieu of prerogative writ Rule 3:81-14 both expressly and in spirit calls for a determination as to whether or not the interests of justice require an exception.
*15 What are the requirements of justice in the instant case? The question presented in this case is solely one of law. Any determination of that question either by the Director of the Division of Local Government, N.J.S.A. 40:2-53, or by the Division of Local Government, N.J.S.A. 52:27BB, would clearly be subject to judicial review, N.J.S.A. 40:2-53 and N.J.S.A. 52:27BB-20. On such judicial review of a question of law the opinions of these administrative tribunals would not be persuasive as they would be on questions of fact within their purview. The only result of requiring an exhaustion of administrative remedies where only a question of law is in issue would be useless delay, and this in the interest of justice cannot be countenanced. The case thus presents another instance (i.e., where the disposition of the matter depends solely on the decision of a question of law) in addition to the two situations specifically stated in Ward v. Keenan where under Rule 3:81-14 the interests of justice do not require the exhaustion of administrative remedies."
What was said above in Nolan is equally applicable to the case at bar. The question involved in this case is solely a question of law. The only result of requiring an exhaustion of administrative remedies would be useless delay. Therefore, because of the nature of the matter and because the question is solely one of law, this court will proceed and determine the proper construction of R.S. 18:6-53.

II.
Defendants in their answer have attacked, in effect, the right of plaintiffs to raise the question of the validity of the action of the defendant City of Elizabeth in appropriating the sum of $6,308,248.71. The defendants allege this in substance in their first, second, third and eighth separate defenses. Plaintiffs contend that they have been or will be injured by the action of defendants, and that consequently plaintiffs have a clear right to question the legality of such action.
Plaintiffs are tenure teachers employed by the Elizabeth Board of Education. Included in the budget in the amount of $6,308,248.71 were certain increments that plaintiffs, together with all the other teachers, were to receive if the city had appropriated the aforesaid sum. By reason of the *16 failure of the City of Elizabeth to appropriate this sum, they will not get these increases.
There has been in recent years a more liberal judicial response to an attack of alleged improper public actions. For example, in Koons v. Board of Com'rs of Atlantic City, 134 N.J.L. 329 (Sup. Ct. 1946), the court ultimately held that a resident of a municipality, even though she was not a property taxpayer, could, by means of a writ of certiorari, question a sales tax. At page 338 Justice Heher pointed out the determining factor as to the status of a plaintiff:
"The determinative question is whether the challenger has sustained, or is in immediate danger of sustaining, some direct and certain injury as the result of the enforcement of the statute."
The policy of our Supreme Court may be seen in Walker, Inc. v. Borough of Stanhope, 23 N.J. 657 (1957), where the court decided that the potential loss of business by a businessman was sufficient to give him enough interest to enable him to challenge in a prerogative writ proceeding a certain ordinance even though he was neither a citizen nor a taxpayer of the municipality enacting such ordinance. In reaching this decision Justice Jacobs indicated (at page 661) the significance of the prerogative writ in our State as a safeguard against wrongful official action:
"In our State, perhaps more than any other, the prerogative writ has been broadly made available as a comprehensive safeguard against wrongful official action. Garrou v. Teaneck Tryon Co., 11 N.J. 294, 302 (1953). In Gimbel v. Peabody, 114 N.J.L. 574, 577 (Sup. Ct. 1935) the plaintiff obtained a writ of certiorari to review proceedings by the Township of Pennsauken and others for the operation of a greyhound racing track in the township. The court set aside the proceedings as violative of the anti-gambling provisions of the Constitution; with respect to the plaintiff's capacity to sue, it remarked that he had the standing of a citizen and taxpayer and that measures `to test the legality of proceedings in direct violation of the fundamental law of the state should be liberally granted.'"
And at page 666 the court concluded, as indicated above, that the plaintiff had sufficient standing to raise the question involved:
*17 "We are satisfied that, under the particular circumstances presented in the instant matter, the plaintiff may fairly be deemed to have a sufficient standing to maintain its action. There has been real and substantial interference with its business and the serious legal questions it has raised should, in the interest of the public as well as the plaintiff, be passed upon without undue delay."
And in Elizabeth Federal S. & L. Ass'n v. Howell, 24 N.J. 488 (1957), the late Chief Justice Vanderbilt again emphasized, at pages 500-501, the liberal approach of the court regarding the use of the prerogative writ as a form of protection against improper official action:
"Early in our judicial history the courts of this State in almost every respect took a more liberal view of the province of the prerogative writ of certiorari than the courts of any other state, Goodnow, `The Writ of Certiorari,' 6 Pol. Sc. Q. 493, 510, 526 (1891). The New Jersey courts extended the scope of certiorari far beyond its limited use at common law to review judicial acts, so as to include quasi-judicial, quasi-legislative, administrative and municipal action. Notwithstanding this liberal tradition, this form of protection against improper official action was further broadened by the Constitution of 1947, Art. VI, Sec. V, par. 4, to make its relief available as a matter of right and not only as a matter of discretion. Ward v. Keenan, 3 N.J. 298, 302-309 (1949)."
Certainly what has been indicated above is applicable here. There can be no question that plaintiffs stand to suffer financially if the public actions of defendants are not questioned. Consequently, plaintiffs certainly have a direct financial interest in this matter. This interest, when coupled with the important public questions involved, gives plaintiffs standing to obtain a determination of the meaning of R.S. 18:6-53. Furthermore, this suit is not based on any alleged improper actions of the board of education. This action is based on the alleged improper actions of the board of school estimate and the City Council of the City of Elizabeth. Thus the board of school estimate and the City of Elizabeth are proper parties. The board of education would not be a proper party.

*18 III.
Plaintiffs contend that the 1 1/2% limitation in R.S. 18:6-53 applies only to the true valuation of ratables of the City of Elizabeth as determined by the Union County Board of Taxation. This amount for the year 1961 was in the amount of $433,817,887, and thus the sum certified by the board of school estimate of $6,308,248.71 was less than 1 1/2% of the above amount. Thus it was mandatory under R.S. 18:6-53 for the city council to appropriate this amount.
On the other hand, defendants contend that the "assessable" ratables for the year 1961 were $156,589,858, so that the amount requested by the board of school estimate was in excess of 1 1/2% of that sum, and therefore required the concurrence and consent of the governing body. If the 1 1/2% refers to the total assessments made by the City of Elizabeth, then the defendants are correct and the consent and concurrence of the governing body are necessary for the appropriation of the amount in controversy. If, on the other hand, the 1 1/2% refers to the true value of the ratables as determined by the Union County Board of Taxation  as plaintiffs contend  then the City of Elizabeth had no choice but to appropriate the amount certified to it by the board of school estimate.
R.S. 18:6-53 provides as follows:
"The governing body of a municipality shall upon receipt of the notice, appropriate the amount certified as provided in sections 18:6-50 and 18:6-51 of this title, as the case may be, by including it in the tax ordinance, and such amount shall be assessed, levied and collected in the same manner as money appropriated for other purposes in such municipality is assessed, levied and collected. No amount in excess of one and one-half per cent of the valuation of the assessable ratables of any municipality as determined by the county board of taxation shall be appropriated except with the concurrence and consent of the governing body expressed by its resolution duly passed." (Emphasis supplied)
The controversy settled on the last sentence of the paragraph. The plaintiffs interpret the term "* * * the *19 valuation of assessable ratables of any municipality as determined by the county board of taxation * * *" as meaning the "true value" of said ratables.
The defendants construe the clause as meaning the valuation of "assessed ratables" of the municipality.
The statute must be read in its entirety, and the first section of the statute (R.S. 18:6-53) reads as follows:
"The governing body of a municipality shall upon receipt of the notice, appropriate the amount certified as provided in sections 18:6-50 and 18:6-51 of this title, as the case may be, by including it in the tax ordinance, and such amount shall be assessed, levied and collected in the same manner as money appropriated for other purposes in such municipality is assessed, levied and collected." (Emphasis supplied)
If the amount to be appropriated is to be assessed, levied and collected in the same manner as money appropriated for other purposes in such municipality is assessed, levied and collected, then it is clear that the appropriations for school monies must be provided for in the same manner and using the same measure as is used in the appropriation of monies for other purposes.
Further, the Union County Board of Taxation fixed and determined that the "net valuation on which taxes are apportioned" shall be $433,817,877, and this amounts to nothing more than an equalization of value upon which the expense for running a county government shall be apportioned and is not a measure for the support of the city government. On the contrary, the measure used for the support of the city government is the assessed ratables originally determined by the local assessors.
The Elizabeth school district and the City of Elizabeth are synonymous. The city alone supports its school system, in contrast to some school districts which are consolidated school districts with two or more municipalities sharing the cost. The Elizabeth school district is known in educational circles as a chapter VI District because the school district and the municipality are one and the same, and *20 is operated under the provisions of chapter VI of Title 18. The city assesses, levies and collects taxes for all other purposes, and the amount of money so collected in taxes is determined and fixed at the municipal level, and all appropriations for the expenditure of the city monies are based upon it. R.S. 18:6-53 clearly and unequivocally states that the amount provided for school purposes shall be provided for in the same manner as other money is provided for. The language is clear, and if the construction of the statute were otherwise, the city would be compelled to appropriate money using one method for all other purposes and a different method for school purposes. Such a situation would throw the entire financial structure of the city and other cities operating under chapter VI out of balance.
Plaintiffs contend that the term "valuation of the assessable ratables" means "true value." However, the statute does not state "true value," and the words "true valuation" are not used in the statute. Neither does the statute use the term "net valuation on which county taxes are apportioned." Webster's New Collegiate Dictionary defines "valuation" as "an estimated worth or price, estimation"; and Black's Law Dictionary defines "valuation" as the "act of ascertaining the worth of a thing; the estimated worth of a thing." The term "assessable property of the town" means all property in the town liable to be assessed for the purpose of taxation. Weber v. Probey, 125 Md. 544, 94 A. 162, 165 (Ct. App. 1915); 4 Words and Phrases, p. 414. So that the term "valuation of assessable ratables of any municipality"  in the absence of the term "true valuation" or "net valuation on which county taxes are apportioned"  means an estimate of the ratables in the municipality liable to be assessed for the purpose of taxation. This definition is more general than and is not restricted to "true value" which has been defined in N.J.S.A. 54:1-35.3 as follows:
*21 "True value for the purposes of this act shall be deemed to be a valuation at current market prices or values, determined in such manner as the director may in his discretion select. The director shall determine the ratio of aggregate assessed to aggregate true valuation of real estate of each taxing district."
Thus it is evident that true value is "valuation at current market prices or values" and aggregate "assessed valuation" is different from aggregate "true valuation" and the word "valuation" is not limited or restricted to "true valuation."
On the other hand, the terms "assessable" and "valuation of assessed" have similar meanings. The term "assessed" is equivalent to the term "imposed." Town of Brandon v. Harvey, 105 Vt. 435, 168 A. 708, 710 (Sup. Ct. 1933); 4 Words and Phrases, p. 415. An "assessment" of real or personal property is an official estimate of the values which are to constitute the basis of an apportionment of a tax. Village of Ridgefield Park v. Bergen County Board of Taxation, 61 N.J. Super. 170 (Law Div. 1960). An "assessment" is value placed on property to which the rate per cent is applied to reach the amount of taxes required by local taxing authorities. People ex rel. Ingram v. Wasson Coal Co., 403 Ill. 30, 85 N.E.2d 182, 185 (Sup. Ct. 1949). So it would seem that the definition of "assessed" or "assessments" would be more in harmony with the term "assessable" than is "true value."
The county board of taxation must determine the valuation of the assessable ratables. The county board of taxation must not only equalize the value of taxable property, but must also correct the list of assessable ratables by including any taxable property omitted from assessment. N.J.S.A. 54:3-20; R.S. 54:4-58. Therefore, the language of R.S. 18:6-53 should be construed to mean a valuation originally determined by local authorities, of property included on the list of assessable ratables as finally determined by the county board of taxation. Assessments levied on property in the assessors' duplicate are not complete until the county board of taxation certifies the *22 assessors' duplicate to the tax collector. Hackensack Water Co. v. Division of Tax Appeals, 2 N.J. 157 (1949). Indeed, if the Legislature intended that the valuation be that of the local board, this is the only way in which the said language can be interpreted.
To construe certain words in a statute, the entire statute must be read and considered as a whole. Denbo v. Moorestown Township, 23 N.J. 476 (1957). A unitary reading of R.S. 18:6-53 indicates that the basic reason for its existence is to direct the governing bodies of municipalities to appropriate, without question, the amount of the certified school budget. It further directs that the money for such appropriation is to be obtained by the same means as money appropriated for other purposes, namely, by taxes based upon local property valuations. No discretionary powers are instilled in the governing bodies with regard to this matter. Townsend v. State Board of Education, 88 N.J.L. 97 (Sup. Ct. 1915). However, the second sentence of R.S. 18:6-53, the sentence with which we are primarily concerned, imposes a limitation on this mandatory directive. It would seem that this limitation has been imposed to prevent the board of education or the board of school estimate from forcing upon the municipal governing body a budget which, by virtue of its size, would overburden the financial resources of the municipality. To use as a norm for this limitation a figure other than the one upon which the municipality's revenue depends (including that portion appropriated for the school budget) could place an undue burden on the financial resources of the municipality.
A limitation on appropriations similar to the one under discussion is found in N.J.S.A. 18:6-62. The limitation contained therein is concerned with money appropriated for school buildings and land and is that no amount shall be appropriated in excess of 3% of the average assessed valuation of property as defined in said section 18:5-88 in the district except with the concurrence and consent of the governing body, and section 18:5-88 defines *23 the "average assessed valuation of property" in a school district comprising one municipality as "the average of three next preceding assessed valuations of the taxable real property * * * of the municipality * * *." Assessed valuations are made on the local level (see Essex County Park Comm. v. Board of Chosen Freeholders, 58 N.J. Super. 93 (App. Div. 1959), where the court distinguishes between the terms "assessed valuation" and "true value"). The court at page 101 states as follows:
"There is legislative recognition here that `assessed valuation' and `true value' are not the same thing."
This section (N.J.S.A. 18:6-62) is comparable to R.S. 18:6-53 and should therefore bear upon the construction of the latter. Statutes constituting a system should be so construed as to make that system consistent in its parts and uniform in its operation. Where statutes are part of a general system relating to the same class of subjects and rest upon the same reasons, they should be construed if possible so as to be uniform in their application and in the results which they accomplish and statutes upon cognate subjects may be referred to though not strictly in pari materia. 2 Sutherland, Statutory Construction (2d ed.), sec. 443, pp. 847, 848.
The board of school estimate is required by the provisions of N.J.S.A. 18:6-50 to fix and determine the amount necessary for the school appropriation by February 15 of each year. Under the provisions of N.J.S.A. 54:3-18 the valuation figures prepared by the county board of taxation are not required to be completed before March 10 of each year, and this includes the figures under column 7 of P-2, entitled "Net Valuation Taxable including Second-Class Railroad Property," which consists of the ratables assessed locally.
This would seem to indicate that the board of school estimate would be forced to certify an appropriation without the use of the final county figure. See Essex County Park *24 Comm. v. Board of Chosen Freeholders, supra, at page 107. This would be the situation if R.S. 18:6-53 provided that the determination of the county board of taxation should be the determination for that particular year. However, the statute is silent as to this. This permits the board of school estimate to use the determination of the county board of taxation for that particular year; or, if the final county figures are not ready, then the determination of the county board of taxation for the preceding year may be used. As stated above, the phrase "as determined by the county board of taxation" imposes a limitation on the mandatory directive of R.S. 18:6-53 and it would seem that this limitation has been imposed to prevent the board of education and the board of school estimate from forcing upon the municipal governing body a budget which by virtue of its size would overburden the financial resources of a municipality. A construction that will render any part of a statute inoperative, superfluous or meaningless is to be avoided, State v. Sperry & Hutchinson Co., 23 N.J. 38 (1956), and it is fundamental to statutory construction that a statute be construed as a whole and, if possible, full effect must be given to all its parts. Tagmire v. Atlantic City, 35 N.J. Super. 11 (App. Div. 1955). Thus, the phrase "as determined by the county board of taxation" must be considered in construing the statute, R.S. 18:6-53.
Defendants argue that the valuation, or equalization, by the county tax board is merely for the purpose of equitable apportionment of the costs of county government. A review of the pertinent statutes and of cases dealing with the matter indicates this argument to be cogent. N.J.S.A. 54:4-49 states:
"* * * each county board of taxation, after * * * having equalized the aggregate valuations of all the real property in the respective taxing districts * * * shall * * * apportion the amount to be raised in the respective taxing districts for State, State school, county and free county library purposes and for purposes of regional and consolidated school districts and school districts comprising *25 2 or more taxing districts, on the basis of the total valuation so ascertained for each taxing district."
In the Essex County Park Commission case, supra, the court was construing N.J.S.A. 40:37-15.1, which requires that the fund appropriated for the maintenance of public parks and roads shall not be "less than one-half of one mill on the dollar, nor more than one mill on the dollar of the assessed valuation of the taxable ratables of the county." The issue in that case, like the present case, was concerned with whether the valuation to be used in the formula should be that made on the local level or that of the county board of taxation. The court, in deciding that local assessments were the proper norm, on page 102 stated:
"The legislative purpose in enacting the equalization statute was clearly to limit the use of the equalization table to apportionment situations. As the Law Division judge observed, the present case is not one of apportionment."
In Maplewood Township v. Essex County Board of Taxation, 39 N.J. Super. 202 (App. Div. 1956), and again in Berkeley Heights Township v. Union County Regional Board of Education, 23 N.J. 276 (1957), it was held that the county board's equalization tables should be used for apportionment purposes in order to effect an equitable distribution of such expenses. Both of these cases were concerned with an apportionment of school costs among members of a common school district. Furthermore, in Berkeley Heights v. Union County Regional Board of Education, supra, the decision of the court was based on "apportionment valuations," the latter term being arithmetically defined in N.J.S.A. 54:4-49 (L. 1956, c. 93, sec. 2) as a figure attained after equalization of the district aggregate, and the amendments placed the responsibility for apportionment upon county tax boards rather than regional school boards. The statute in the case at bar does not use the term "apportionment valuations," and this is not a case of apportionment of expense of a joint school *26 endeavor upon the basis of the local assessors' aggregate valuation, as was the case in Berkeley, supra.
A review of the legislative history of R.S. 18:6-53 shows that the source of this statute was L. 1903, c. 1, art. VI, sec. 75, which in part provided that any amount in excess of three-quarters of one per cent of the taxable valuation of the real and personal property shall be appropriated only with the concurrence and consent of said common council, board of finance or other body expressed by its resolution duly passed. Thus the original statutes use the term "taxable valuation." Other amendments such as L. 1919, art. VI, sec. 75, and L. 1922, c. 243, sec. 75, used the same language but made changes in the dates. However, on March 15, 1922, L. 1922, c. 248, was enacted, which provided that any amount in excess of three-quarters of one per cent of the valuation of the assessable ratables of such city as determined by the county board of taxation of the county in which said city is situated shall be appropriated only with the concurrence and consent of said common council, board of finance, or other body by its resolution duly passed. In this amendment the words "taxable valuation" were eliminated and the term "valuation of the assessable ratables of such city as determined by the county board of taxation, of the county in which said city is situated" were substituted.
L. 1925, c. 236, was an amendment which increased the percentage from three-quarters of one per cent to one and one-half per cent. It is significant that the statement attached to this amendment when it was introduced reads as follows:
"The purpose of this bill is to allow the Board of School Estimate in a city school district to fix and determine the amount for the annual school budget up to one and one-half per centum of the assessed valuations instead of three-quarters of one per centum as heretofore, which sum shall be mandatory for the governing body of a city to appropriate." (Emphasis supplied)
*27 It must be noted that the statement uses the words "assessed valuations" after L. 1922, c. 248, had been in effect for a period of approximately three years.
Other amendments, L. 1933, cc. 28 and 400, used the same language as that of L. 1922, c. 248. Thus a review of the history of the statute and its amendments as well as the statement set out above reveals that the legislative intention was to use the term "valuation" generally, and to base the 1 1/2% on the valuation of the "assessed ratables" and not on the "true valuation" of the ratables or the "net valuation" of the ratables on which county taxes are apportioned.
When the words of a statute are susceptible of two meanings, the one favorable and the other hostile to its principal design, the former should prevail and control the construction, and in construing constitutional and statutory provisions the court has rightly recognized that since words are inexact tools at best, resort may freely be had to the pertinent constitutional and legislative history for aid in ascertaining the true sense and meaning of the language used. Lloyd v. Vermeulen, 22 N.J. 200, 205, 206 (1956). The judicial goal is to carry out fairly legislative purpose and plan, and history and contemporaneous construction may well furnish important light as to that purpose and plan. New Jersey Pharmaceutical Ass'n v. Furman, 33 N.J. 121 (1960). See also Town of Brandon v. Harvey, supra.
Furthermore, the introducer's statement that was appended to L. 1925, c. 236, with reference to "assessed" valuations is relevant evidence on any proper issue as to the legislative intent, although a considered judgment must be exercised in determining the weight to be attached to it. Morris & Essex Investment Co. v. Director of Division of Taxation, 33 N.J. 24, 33, 34 (1960); Deaney v. Linen Thread Co., 19 N.J. 578 (1955).
When the board of school estimate certified the sum of $6,308,248.71, that sum was in excess of 1 1/2% of the *28 assessed ratables of the city, which amounted to $156,589,858 (see column 7, p. 2), and therefore required the concurrence and consent of the city council. The city council referred the certificate to a committee of the whole, and while it was in committee the board of school estimate rescinded its certificate and on March 28, 1961 forwarded a second certificate to the city council, which certificate was concurred in and consented to by the city council and was included in the 1961 budget, and the budget with the inclusion of the school monies was approved by the Director of the Division of Local Government.
It was pointed out in the oral argument that as a result of the change of government of the City of Elizabeth on January 1, 1961 all city affairs were undergoing a transition period, and obviously the completion of many tasks was unavoidably delayed; therefore, the municipal budget was not forwarded to the Director of the Division of Local Government until after the time provided for in the statute, and the local budget, which included in it monies appropriated for school purposes, was approved by the Director of Local Government upon receiving explanation for the delay.
The time limits fixed in the statute covering county and municipal budgets, R.S. 40:2-5, etc., and R.S. 18:6-51 concerning school districts, were designed for an orderly preparation and completion of the county and municipal budgets. In accordance with the provisions of N.J.S.A. 18:6-50 the board of school estimate did, not later than February 15, 1961 (on February 14, 1961), fix and determine the amount of money necessary to be appropriated and made out the two necessary certificates. It was only after the city council on February 28, 1961 voted not to appropriate the amount certified which exceeded the 1 1/2% as set out above that the board of school estimate reconsidered and reduced the amount to $6,147,739.86 on March 28, 1961, which amount was concurred in and consented to by the city council on the same date. Thus, the *29 board of school estimate did comply with the statute when it submitted its original estimation on February 14, 1961. The Director of Local Government has ample power and authority to enforce the time provisions, and in this case after due explanation of the delay he certified the budget in accordance with N.J.S.A. 40:2-10.1 which gives him the authority to receive, examine and certify any county or municipal budget beyond the time limits prescribed by statute, provided satisfactory reasons for the delay are submitted. The plaintiffs have not been harmed in any way by the delay and cannot attack the submission and certification of the budget on this account.
Furthermore, in Townsend v. State Board of Education, 88 N.J.L. 97 (Sup. Ct. 1915), the court held:
"The certificate of a board of school estimate to the municipal board or council, required by section 75 of the School Act (4 Comp. St., p. 4746) is a certificate of the total amount required for the purposes specified in section 74, and not of the specific items to which such amount is applicable; and said total, when certified and appropriated, is at the disposal of the board of education for such application within the provisions of the act as said board chooses to make it, in whole or in part."
Therefore, it would seem that the action of the board of school estimate is a necessary action in order to provide money for the public schools; that the submission of a certificate to the city council and the concurrence and consent by the city council, and the final approval by the Director of the Division of Local Government was in accordance with the statutes.

IV.
During the course of the oral argument a discussion was held by the court and counsel as to the practice in other municipalities. The information available was rather indefinite, and it was also pointed out that the practice was not uniform throughout the State. With reference to this the defendant submitted the following affidavit:
*30
 "STATE OF NEW JERSEY |
 > SS.
 COUNTY OF MERCER |
RUTH H. PAGE, of full age being sworn according to law on her oath, deposes and says: I am the Executive Secretary of the State Federation of District Boards of Education of New Jersey. A Special Committee of the Federation has made a study of statutory budget limitations in Chapter VI Districts, and the following information is excerpted in the reports of the Committee in the minutes and in reports to the Executive Committee of the Federation.
A special Committee of the Federation has made a study of the statutory budget limitations in Chapter VI Districts. It was found that the majority of these Districts under current restrictions must apply to the governing body for consent, since most local appropriations exceed 1 1/2% of the assessed ratables.
Conceivably the original intent of the law meant to apply to budgets which exceeded 1 1/2% of true value. Thirty years or more of use has made the local level of assessment the measure. The Committee then made a study of the effect of 1 1/2% and 2% of true value on local appropriations. The enclosed study shows that sixteen districts would still be over their limit if 1 1/2% of true value were used and three districts would need the consent of the governing body even if 2% of true value was adopted. The Committee therefore submitted the following recommendations for legislative amendment to the Executive Committee.
1. Budget limitations in Chapter VI Districts should be based on true value.
2. The percentage should be raised from 1 1/2% to 2%.
3. Budgets needing the consent of the governing body would automatically be referred to the Commissioner of Education in cases where the governing body and the Board of School Estimate could not reach agreement by March 1.
The Committee felt that these provisions would give greater fiscal independence to boards in Chapter VI districts and would provide redress where a stalemate existed between two bodies responsible for setting the amount for budgets which exceeded the new limitations.
 Sworn and subscribed before me |
 > RUTH H. PAGE
 this 30th day of April 1961 |
 ROBERT R. LUSE
 Notary Public of New Jersey
 My Commission Expires September
 23rd 1964
 A true Copy
 RAYMOND LEAHY"
According to this affidavit  although the original intent may have been otherwise  the local level of assessment has been the measure as applied to school budgets for over *31 30 years. This affidavit also points out the need for corrective legislation in order to expressly provide that budget limitations in chapter VI districts should be based on "true value." It has already been noted above that R.S. 18:6-53 does not expressly provide for this.
Sometime during the middle of October 1961 defendants filed with this court an affidavit signed by George C. Skillman, Director of the Division of Local Government of the State of New Jersey. Although this affidavit was filed almost four months after the oral argument was heard in this matter, this court accepted the affidavit because it covered the subject matter discussed at the oral argument  as previously stated.
The contents of this affidavit corroborate in substance the contents of the affidavit of Ruth H. Page, supra, and read as follows:
 "STATE OF NEW JERSEY |
 > SS.
 COUNTY OF MERCER |
GEORGE C. SKILLMAN, of full age being sworn on his oath according to law, deposes and says:
I am the Director of the Division of Local Government in the Department of the Treasury of the State of New Jersey.
There are approximately fifty-nine Chapter VI School Districts in the State of New Jersey.
All of the Chapter VI Districts in the State of New Jersey base the one and one-half per cent of the valuation of the assessable ratables on the net valuation taxable including second class railroad property as shown in column seven of the Abstract of Ratables. Abstracts of ratables are certified by the several county boards of taxation upon the amounts fixed by the local assessors, and the above one and one-half per cent is not based upon the net valuation on which county taxes are apportioned as shown in column eleven of the abstracts. A copy of the Abstract of Ratables for Union County for 1961 is hereto attached and marked Schedule `A'.
The office of the Division of Local Government does and will certify any local budget which in Chapter VI School Districts includes the school budget, if it is properly adopted by the local governing body after the statutory time limit has expired up to April 10th of each year.
 Sworn to and subscribed before
 me this 11th day of October 1961. GEORGE C. SKILLMAN
 MABEL I. WALKER
 A Notary Public of New Jersey"
*32 Thus it is evident that all of the 59 chapter VI school districts in the State base the 1 1/2% of the valuation of the assessable ratables on the net valuation taxables, including second class railroad property, as shown in column 7 of Schedule A (attached, which is the same as P-8, column 7) of the abstract of ratables, and not on the net valuation on which county taxes are apportioned as shown in column 11 of Schedule A (attached, which is the same as P-8, column 11) of the abstract of ratables. As applied to the City of Elizabeth for 1961, the amount in column 7 is $156,589,858 and the amount in column 11 is $433,817,887.
In the case of a practical construction and usage not having judicial sanction in construing a statute of doubtful terms, long duration is of their very essence. These are in effect constructions of an obscure law, and to have weight should prevail for a long period, and their observance be uniform and notorious.
A statute such as this may be acted upon and practically construed by the parties for whose purposes it was enacted so as to induce an adoption of their constructions for a long period of time provided such construction and observance be uniform and notorious. 2 Sutherland, Statutory Construction (2d ed.), sec. 477, p. 895.
In the case at bar all of the 59 chapter VI school districts have construed the statute in the same manner as the defendants and this construction and usage have continued for more than 30 years. This construction has been for a long duration and has been uniform and notorious. Whenever there is a debatable question as to the proper construction of a statutory provision, continued usage and practice under it require construction thus put upon it to be accepted as the proper one. Presbyterian Church of Livingston v. Division of Alcoholic Beverage Control, 53 N.J. Super. 271 (App. Div. 1958); In re Hudson County, 106 N.J.L. 62 (E. & A. 1928).
*33 It is my opinion that the term "valuation of the assessable ratables * * * as determined by the county board of taxation" means the valuation that the municipality puts upon the assessable ratables as determined by the county tax board and set out in column 7, Schedule A of the abstract of ratables. See Hackensack Water Co. v. Division of Tax Appeals, supra; N.J.S.A. 54:4-35, 46, 47, 55.
Therefore the motion for summary judgment made in behalf of the plaintiffs is denied.
The motion for summary judgment made in behalf of the defendants is granted.