40 N.J. Super. 549 (1956)
123 A.2d 810
TOWNSHIP OF BERKELEY HEIGHTS IN THE COUNTY OF UNION, A MUNICIPAL CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
BOARD OF EDUCATION OF THE UNION COUNTY REGIONAL HIGH SCHOOL DISTRICT NO. 1; TOWNSHIP OF SPRINGFIELD IN THE COUNTY OF UNION, A MUNICIPAL CORPORATION OF NEW JERSEY; BOROUGH OF MOUNTAINSIDE IN THE COUNTY OF UNION, A MUNICIPAL CORPORATION OF NEW JERSEY; BOROUGH OF KENILWORTH IN THE COUNTY OF UNION, A MUNICIPAL CORPORATION OF NEW JERSEY; BOROUGH OF GARWOOD IN THE COUNTY OF UNION, A MUNICIPAL CORPORATION OF NEW JERSEY; TOWNSHIP OF CLARK IN THE COUNTY OF UNION, A MUNICIPAL CORPORATION OF NEW JERSEY; AND THE UNION COUNTY BOARD OF TAXATION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 29, 1956.
*552 Mr. Edward A. Pizzi, attorney for plaintiff (Mr. Richard G. O'Brien, appearing).
Messrs. Ryan & Saros, attorneys for defendant Board of Education of the Union County Regional High School District No. 1.
Mr. Max Sherman, attorney for defendant Township of Springfield.
Mr. Earl Pollack, attorney for defendant Borough of Kenilworth.
Mr. Louis J. Dughi, attorney for defendant Borough of Garwood.
Mr. Morris Barnett, attorney for defendant Township of Clark.
Mr. Grover C. Richman, Jr., Attorney-General of New Jersey, attorney for defendant Union County Board of Taxation (Mr. Thomas P. Cook, Deputy Attorney-General, appearing).
HUGHES, J.S.C.
This complaint in lieu of prerogative writ was filed by the Township of Berkeley Heights, which is one of the municipal taxing districts of the County of Union. It is likewise one of the constituent municipal taxing *553 school districts comprising Union County Regional High School District No. 1. That district exists by virtue of its creation pursuant to a special election called for that purpose in 1935 under R.S. 18:8-1 et seq., and includes the municipal taxing school districts of the Boroughs of Garwood, Kenilworth and Mountainside and of the Townships of Springfield and Clark, in addition to the plaintiff. By force of R.S. 18:8-17 the amounts of money needed for annual or special appropriations for a regional school district and including the amounts to be raised for redemption and interest on bonds, is apportionable to the constituent school taxing districts upon the basis of their respective ratables. By the election required by the statute the voters of this regional district approved the school budget for the year 1956 and other formal requisites were complied with early in 1956.
This being done, and under the authority of R.S. 18:8-17(3), the regional board of education made the apportionment required by that statute, based upon the ratables of the respective constituent school districts for the year 1955. On February 27, 1956 it certified the results of such apportionment to the Union County Board of Taxation and to the assessors of the several taxing districts and the municipal clerks of the municipalities therein included. The amount of district taxes to be raised in the regional district for current expenses was fixed at $712,914.76, and for retirement and interest on bonds of $207,560.07, or a total of $920,474.83. The total of ratables of regional district constituents was determined to be $58,281,375, of which plaintiff, Berkeley Heights, possessed $8,185,132. The apportionment of school taxes to be raised by plaintiff, on the basis of this ascertainment of ratables, was therefore $100,122.92 for current outlay and $29,150.08 for bond retirement and interest, or a total of $129,273.
Meanwhile, the Union County Tax Board by virtue of its obligations under R.S. 54:3-18 had met to equalize the assessments of real property between the several taxing districts of the county. As the result of recent judicial pronouncements unnecessary to quote here, new concepts of true *554 value and other elements resulted in an equalization table (under R.S. 54:3-19) which substantially altered the ratables deemed to exist in each of the constituent districts. Thus, the total ratables of the constituent communities was fixed at $258,096,296, and that of the plaintiff Berkeley Heights was fixed at $53,488,157, as compared with the previous total of the region of $58,281,375 and a Berkeley Heights total of $8,185,132, as above mentioned. This revaluation and equalization of ratables (having binding effect, if ultimately found to be valid, under R.S. 54:3-19, supra) resulted in this difference as to plaintiff Berkeley Heights in the amount of school taxes required to be raised by it:-the amount for current outlays increased from $100,122.92 to $147,745.23 and for retirement of bonds and interest from $29,150.08 to $43,014.97. These figures resulted in a total of increased taxes to be raised by Berkeley Heights of approximately $61,487. While the increase in ratables as determined by the Union County Board of Taxation was general, in that all municipalities were increased, the increase in apportionment resulted in a lower apportionment for some communities whose ratables, while increased by the equalization table, were not increased proportionately to those of Berkeley Heights.
The revalued apportionment was accepted by the regional board of education which, on April 3, 1956, by resolution certified the new figures to the appropriate assessors of the constituent school taxing districts, including the plaintiff.
Thus aggrieved, and condemning the new certification as illegal and void, plaintiff seeks the judgment of this court nullifying the reapportionment referred to, compelling the reinstatement of the original apportionment, and requiring the Union County Board of Taxation to reflect such reinstated original apportionment in the respective municipal tax rates fixed by it for the year 1956. Among its grounds of attack are included the time limitations of the statute, the finality which should be accorded a tax levy imposed, the constitutionality of the statute, R.S. 18:8-17, supra, and the disproportion of cost per pupil between it and other constituent municipalities.
*555 In seeking summary judgment defendants urge that plaintiff has not exhausted its administrative remedies and that under R.R. 4:88-14 the complaint should be dismissed since it does not appear that it is "manifest that the interests of justice require otherwise." Insofar as the complaint here challenges the validity of the adoption by the tax board of the equalization table contemplated by R.S. 54:3-18, 19, supra, the defendants are clearly in the right. As a matter of fact, such equalization, having been challenged by several Union County municipalities, is presently pending on appeal before the State Division of Tax Appeals. But insofar as the action is aimed at the steps taken by the regional board of education (and assuming, as I must, the validity of the equalization determined by the tax board), other meritorious questions exist which the court should, under all the circumstances and in the manifest interests of justice, now consider. Administrative relief (other than and beyond the appeal from or review of the equalization action of the Union County Board of Taxation) is not so clearly and manifestly available as to oust the Law Division of jurisdiction. Cf. Baldwin Construction Co. v. Essex County Board of Taxation, 21 N.J. Super. 370 (Law Div. 1952); Apex Building, Inc. v. Essex County Board of Taxation, 24 N.J. Super. 252 (Law Div. 1952).
And on the merits I determine that R.S. 18:8-17, supra, and its auxiliary procedural statutes, are valid and constitutional; that it is within the power of the Legislature to apportion school costs on the basis of ratables, unless a given region determines otherwise, as its voters are permitted to do under the statute, R.S. 18:8-19; that such constitutional power is based upon the very concept of public education which has always inhered in the most basic institutions of our nation's life.
Public education of the young is a public obligation and has always been so considered. The burden of its cost is not allocable alone to the individual taxpayer having an educable child, and no more is it necessarily (although permitted *556 to be by public consent and agreement) allocated to a municipality in proportion to the numbers of its educable children. To hold otherwise would erase a concept of the distribution of public tax obligation quite essential to the wellbeing of the public school system and of the body politic. Such conclusion is not constitutionally necessary and the statute involved is expressive of the obvious intent of the Legislature and spells out accurately the public policy of our State.
So too, the apportionment on the basis of ratables implies that the ratables are properly determined and truly valued, and the elaborate machinery for the determination thereof is not challengeable, under existing circumstances, in this proceeding, by force of R.R. 4:88-14, supra. This being so, and the validity of the equalized valuation being assumed at this stage, the correction and re-certification of the apportionment on April 3, 1956 (to conform to the equalization table adopted by the Union County Board of Taxation on March 10, 1956, and certified by it to the regional board of education with a request for compliance by the instant revision, on March 23, 1956) by the regional board of education is legally unassailable. Plaintiff's sole remedy must be considered to rest with the State Division of Tax Appeals, in its review of the equalization table of the Union County Board of Taxation now before it. In a comparable case, Maplewood Township v. Essex County Board of Taxation, 39 N.J. Super. 202 (App. Div. 1956), aggregates of assessed valuations reflected by the assessment lists for the tax year 1955 were submitted to the Essex County Board of Taxation and were subjected by that county board of substantial increases by way of equalization at true value in accordance with R.S. 54:3-17, 18, 19. The learned writer of that opinion characterizes the obvious intent of the statute as being a purpose that each municipality should bear that proportion of the common school district expense as is represented by the true and actual ratio of the value of the assessed property therein to the value of such property in both, and that the equalization process is intended to *557 achieve a closer approach to true ratios within inevitable practical administrative limitations, than is possible by the use of autonomously fixed local assessed valuations. The general design of the law is said to propose the fair distribution of costs and revenues as between municipalities sharing common burdens.
So here, it was obviously the intent of the Legislature that the statutes providing for apportionment upon the basis of ratables in the respective constituent municipalities, R.S. 18:8-17, supra, was a fair distribution of the school tax burden among such constituent bodies. The statute providing for equalization, R.S. 54:3-18 et seq., supra, has the same objective with regard to revenues and taxes for all purposes, including the burden of maintaining regional schools. And so it must be true that these statutes should be considered in pari materia to the end that the distribution of cost envisaged by the education law should be predicated upon ratables truly valued, i.e., duly equalized by the action called for by the statute on the part of the county board of taxation. Otherwise the purpose of the law would be lost in a futility which would result (if the plaintiff's position here is correct) in the distribution of school costs upon a fictitious and tentative basis, i.e., "autonomously fixed local assessed valuations," unmindful of the true valuation of such ratables which is the fruit, in the statutory intendment, of the equalization action required by R.S. 54:3-18 et seq., supra.
In a supplemental brief the plaintiff calls to the court's attention that the regional high school here involved accommodates 50-60 pupils from the adjoining township of Winfield (that township not being a constituent school taxing district in the region involved) and charges such township a specific sum per pupil rather than on the basis of ratables. This element is urged as a further argument of unconstitutionality in that the statute allowing a board of education to exercise such discretion is an unlawful delegation of legislative authority and capable of being administered in an arbitrary and unreasonable manner.
*558 The action thus taken is based apparently upon the provisions of R.S. 18:14-7, which provides in part as follows:
"The boards of education of the districts containing high schools so designated shall determine the tuition rate to be paid by the boards of education of the districts sending pupils thereto, but in no case shall the tuition rate exceed the actual cost per pupil."
The sense of plaintiff's contention must be that inconsistency in the tax burden imposed upon a constituent district, in accordance with its ratables, and that imposed by this charge upon an outside district whose pupils are admitted, in accordance with an element other than that township's ratables, is such as to invalidate the whole of the statute dealing with the apportionment of school costs. I think this a non sequitur, if one has due regard to the substance of the case sub judice. The argument advanced may indeed bring in issue the validity of the provisions last referred to, but I cannot see the connection between it and the statutory fabric of the distribution of internal costs among the constituent taxing districts of the region. By conferring the power to admit outside pupils, the Legislature obviously intended that unused facilities might be made available to those in need of education in outside districts, and I think this statute properly and constitutionally permits such expedient for the purpose of making full use of school facilities which are so sadly needed wherever one may look.
For the above reasons, I must order summary judgment for the defendants and dismiss the complaint. An order to such effect should be presented, on notice or on consent as to form.