TOWNSHIP OF BERKELEY HEIGHTS IN THE COUNTY OF UNION, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. BOARD OF EDUCATION OF THE UNION COUNTY REGIONAL HIGH SCHOOL DISTRICT No. 1, *ET ALS.*, DEFENDANTS-RESPONDENTS.

Argued January 7, 1957—Decided January 28, 1957.

*Mr. Richard G. O'Brien* argued the cause for the plaintiff-appellant (*Mr. Edward A. Pizzi,* attorney).

*Mr. Thomas P. Cook,* Deputy Attorney-General, argued the cause for the defendant-respondent Union County Board of Taxation (*Mr. Grover C. Richman, Jr.,* Attorney-General of New Jersey, attorney).

*Mr. John F. Ryan* argued the cause for the defendant-respondent Board of Education of the Union County Regional High School District No. 1 (*Mr. Bernard Steiner,* attorney).

*Mr. Michael J. O'Neill* argued the cause for the defendant-respondent Borough of Garwood (*Mr. Louis J. Dughi,* attorney).

*Mr. Earl Pollack* argued the cause for the defendant-respondent Borough of Kenilworth.

The opinion of the court was delivered by

BURLING, J.   The Township of Berkeley Heights, a participant in the Union County Regional High School District No. 1, challenged the action of the board of education and the Union County Board of Taxation in apportioning current expenses and debt obligations of the school district among the participating members on the basis of the equalization table promulgated by the county tax board in 1956. From a summary judgment entered in the trial court (*Township of Berkeley Heights in Union County v. Board of Ed. of Union County, etc.,* 40 *N. J. Super.* 549 (*Law Div.* 1956)), Berkeley Heights filed an appeal ·with the Superior Court,

Appellate Division, and we certified the cause prior to a review below.

The Union County Regional High School District No. 1 was created under *R. S.* 18:8–1 *et seq.*, by virtue of a special election called for that purpose in 1935. It includes the Boroughs of Garwood, Kenilworth and Mountainside and the Townships of Clark, Springfield and the plaintiff Berkeley Heights.

There are two statutory modes whereby operating expenses of a regional school district may be apportioned among the participants—on the basis of ratables or a per capita student basis. *R. S.* 18:8–17. (The former method is required in the reduction of bond indebtedness. *R. S.* 18:8–17(1).) The regional district here has followed the ratable method of apportionment.

Following statutory direction the regional board of education in February 1956 submitted a proposed appropriation to the voters, after public hearing, for the ensuing school year commencing July 1, 1956. *R. S.* 18:8–14, 16; *R. S.* 18:7–77.1, 77.2. The appropriation of $920,474.83 (which included both current expenses and retirement and interest on bonds) was approved by the electorate.

*R. S.* 18:8–17 (prior to amendment by *L.* 1956, *c.* 95, effective January 1, 1957) required the regional board of education itself to apportion the approved appropriation "upon the basis of the ratables of the constituent school districts" and thereafter certify the statement to the Union County Board of Taxation. This was accomplished by February 27. Following prior practice the apportionment was based upon the aggregate valuation of ratables as reported by each of the participating members for 1955 to the county tax board. The respective aggregates constituted the work product of the local assessors before equalization. Based upon its 1955 ratables, Berkeley Heights had the burden of carrying $129,273 of the total appropriation.

Thereafter, the Union County Tax Board returned the statement and requested the regional board of education to compute the apportionment upon the basis of the equalized

valuation of ratables of the participating members. The adjustment worked to increase Berkeley Heights contribution to the school program by some $61,000. The revised apportionment was submitted to the county tax board on April 3 and thus within the time limited for the tax board to make up its table of aggregates and establish a tax rate by April 10. *R. S.* 54:4–52.

■ Berkeley Heights contends, in essence, that the apportionment upon equalized valuations was improper, not only in the light of the applicable statute and alleged prior custom, but also in view of time limitations which were not complied with in the corrected apportionment as directed by the Union County Tax Board.

*R. S.* 18:8–17 (prior to its latest amendment not applicable here) goes no further than to state that the appropriation is to be apportioned upon the basis of the "ratables" of the participating members, at least where, as here, that method of distributing the burden is in force. Now, by virtue of *L.* 1956, *c.* 95, *sec.* 2, which amended *R. S.* 18:8–17, effective January 1, 1957, it is clear that apportionment is upon the basis of the "apportionment valuations," the latter term being arithmetically defined in *N. J. S. A.* 54:4–49 (*L.* 1956, *c.* 93, *sec.* 2) as a figure attained after equalization of the district aggregates. These amendments also place the responsibility for apportionment upon county tax boards rather than the regional school boards. *L.* 1956, *c.* 95, *sec.* 2; *L.* 1956, *c.* 93, *sec.* 1.

The question, then, is what the lawmakers intended the word "ratables" (under the prior legislation) to characterize. Was it ratables before or after equalization?

A substantially identical question was before the Superior Court, Appellate Division, in *Township of Maplewood in the County of Essex v. Essex County Board of Taxation,* 39 *N. J. Super.* 202 (*App. Div.* 1956). The Township of Maplewood and the Village of South Orange formed a common school district. Maplewood sought apportionment of the school appropriation upon its aggregates prior to equalization. The statute involved (*L.* 1904, *c.* 153, *sec.* 3,

*R. S.* 40:160–2(3), Acts Saved from Repeal) directed apportionment upon such ratio "as the *assessed valuation* of said village shall bear to the valuation of the entire district." (Emphasis supplied.)

Recognizing that the term "assessed valuation" was not a term of art, Judge Conford stated in words which we conceive are equally applicable herein:

"The obvious intent of the 1904 statute was that each of the contending municipalities should bear that proportion of the common school district expense as is represented by the *true* or *actual* ratio of the value of the assessed property therein to the value of such property in both. The equalization process is contemplated by the legislature to achieve a closer approach to true ratios, within inevitable practical administrative limitations, than is possible by the use of autonomously fixed local assessment valuations. It is generally designed to serve the purpose of fair distribution of costs and revenues as between municipalities sharing common burdens. Thus, every consideration relevant to 'the general purpose the law was designed to achieve' points to the sense and legal propriety of the use of the equalized valuations in the present case." 39 *N. J. Super.*, at *pages* 206–207.

██ The *Maplewood* case was decided on February 16, 1956, and may well have indicated to the Union County Board of Taxation that apportionment of the regional school appropriation was to be upon the basis of the equalized valuation of the participating members. Although not effective until January 1, 1957, it is not without significance that *L.* 1956, *c.* 93 and *L.* 1956, *c.* 95 were approved shortly thereafter (June 13, 1956). Appreciating the fact that ambiguity in the prior legislation and that the amendatory acts remove the ambiguity, it is wholly reasonable to believe that the purpose of the latest enactments was to clarify the Legislature's position on the matter. If we are to interpret amendatory language in the light of prior statutory language deemed necessary of correction, *Grogan v. De Sapio*, 11 *N. J.* 308, 323 (1953), the same process may reveal what was previously intended but inarticulately expressed. The presumption that a substantive change is intended after a particular statute has attained a settled judicial construction, *Tucker v. Frank J. Beltramo, Inc.*, 117 *N. J. L.* 72,

77 (*Sup. Ct.* 1936), affirmed 118 *N. J. L.* 301 (*E. & A.* 1937), is of less significance where, as here, the statute has not been previously interpreted upon the point in question. And prior practice of a few local officials stemming from the construction of a general law carries little weight, 2 *Sutherland on Statutory Construction* (3d ed. 1943), *sec.* 5106, especially where the interpretation ignores the purpose and method of distributing the burdens of governmental operations. Apportionment of expense of a joint school endeavor upon the basis of the local assessor's aggregate valuation would disregard the concept of equality quite as much as distribution of county government expenses in similar manner.

There are no "time limitations" in the procedure to indicate a contrary interpretation. *R. S.* 54:4–45 requires the school district to submit a certified statement of the amount of moneys *appropriated* to the county tax board by March 1 of each year. This does not concern the statement of apportionment for which we have been unable to find any date line whatever in the statutes. The latter must, of necessity, reach the county tax board prior to April 10, for by this date the latter body has completed the table of aggregates and established the tax rate. *R. S.* 54:4–52. Here the corrected apportionment was completed on April 3 and Berkeley Heights has not been prejudiced thereby.

[4, 5] In essence, we are presented with a situation where Berkeley Heights claims a vested right in unequal distribution of the burden, seeking a continuation of the prior practice. It complains that upon a per capita student basis the property owners of that township are paying a disproportionate share of the regional burden, thereby subsidizing the education of students from other municipalities comprising the regional school district. The factor has no constitutional implications. Education is a matter of public concern; the expenditures necessary to fulfill the responsibility need not be met on a basis of direct benefit to the property charged. *Kelly v. City of Pittsburgh,* 104 *U. S.* 78, 26 *L. Ed.* 658 (1881); *Dickinson v. Porter,* 240 *Iowa*

393, 35 *N. W. 2d* 66 (*Sup. Ct.* 1948), appeal dismissed 338 *U. S.* 843, 70 *S. Ct.* 88, 94 *L. Ed.* 515 (1949).

Apportionment on a per capita basis is permitted under the statutes concerning regional school districts. Such a plan may be submitted to the electorate if the board of education and the State Commissioner of Education, "after study and investigation, shall deem it advisable" to adopt the method. *R. S.* 18:8–19. The alternative method of apportionment was first introduced into this legislation by *L.* 1953, *c.* 90, which permitted all regional school districts created subsequent to the date of that enactment to apportion expenses on a per capita basis. In 1955 this alternative was made available to all such school districts (*L.* 1955, *c.* 159) where submitted to the electorate and approved.

■ Berkeley Heights challenges the constitutionality of *R. S.* 18:8–19, arguing that an "alien will" is imposed between the electorate and the Legislature in the mode of adoption of the alternative scheme of apportionment. · Specifically, objection is directed to the condition precedent of a favorable recommendation from the board of education and State Commissioner of Education that a per capita apportionment is desirable. Berkeley Heights considers the case of *McCarthy v. Walter,* 108 *N. J. L.* 282 (*E. & A.* 1931), to be controlling. There a provision of the Park Act of 1902 (3 *C. S.* 1910, *p.* 4161 *et seq.*) called for an affirmative popular vote in the county before the act would become effective. The county board of freeholders, in their absolute discretion, could submit the issue. The former Court of Errors and Appeals held the act unconstitutional in the light of *Attorney-General v. McGuinness,* 78 *N. J. L.* 346 (*E. & A.* 1910), because "A critical reading of the decision of this court in [that] case leads irresistibly to the conclusion that a statute in the nature of a supplemental charter, which cannot take effect unless through the exercise of a discretion or of a will intervening between the legislature and the voter, is not a constitutionally enacted law."

We are not disposed to respond to the constitutional issue at this time. The attack has been stated as a conclusion

rather than a developed argument, and there is nothing in the record which voices the desire of Berkeley Heights that a proposal to adopt the alternative method of apportionment be placed on the ballot or that a request to this effect has been placed before the board of education. Nor would a conclusion that *R. S.* 18:8-19 is unconstitutional in anywise alleviate the financial burden which Berkeley Heights is equally sharing with her neighbors in the present school year. Therefore it is proper to await a complete presentation of the issue from a litigant who complains of and demonstrates a substantial prejudice.

The judgment will be affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and WEINTRAUB—7.

*For reversal*—None.