242 N.J. Super. 225 (1990)
576 A.2d 331
BOROUGH OF SEA BRIGHT, ANDREW B. MANNING, LINDA HORSAGER AND VICTOR J. PEROTTI, PLAINTIFFS-APPELLANTS,
v.
STATE OF NEW JERSEY, DEPARTMENT OF EDUCATION, SHORE REGIONAL HIGH SCHOOL DISTRICT, BOROUGH OF WEST LONG BRANCH, BOROUGH OF OCEANPORT AND BOROUGH OF MONMOUTH BEACH, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 20, 1990.
Decided July 3, 1990.
*226 Before Judges J.H. COLEMAN, BRODY and SKILLMAN.
Keith A. Bonchi argued the cause for appellants (Goldenberg, Mackler & Sayegh, attorneys; Keith A. Bonchi, on the brief).
Arlene Goldfus Lutz, Deputy Attorney General, argued the cause for respondent New Jersey Department of Education (Robert J. Del Tufo, Attorney General, attorney; Michael R. Clancy, Deputy Attorney General, of counsel; Arlene Goldfus Lutz, on the brief).
Dennis Collins argued the cause for respondent Shore Regional Board of Education (Gagliano, Tucci, Iadanza and Reisner, attorneys; Alexis Tucci, of counsel; Ronald L. Reisner, on the brief).
Steven C. Rubin filed a brief on behalf of respondent Borough of West Long Branch.
*227 No briefs were filed on behalf of respondents Boroughs of Oceanport and Monmouth Beach.
The opinion of the court was delivered by SKILLMAN, J.A.D.
This suit challenges the constitutionality of the method of allocation of the costs of regional school districts provided by Chapter 212 of the Laws of 1975. See N.J.S.A. 18A:13-23. Plaintiffs are the Borough of Sea Bright, which is a member of defendant Shore Regional High School District (Shore Regional), and three taxpayers residing in Sea Bright. Defendants are the New Jersey Department of Education, Shore Regional, and the other constituent members of the regional district, which are the Boroughs of West Long Branch, Oceanport and Monmouth Beach.
Plaintiffs contend that the requirement that Sea Bright contribute to the costs of the regional school district based upon its proportion of the total equalized value of property in the district, rather than the percentage of students who are Sea Bright residents, violates both Article VIII, § 1, par. 1 of the New Jersey Constitution (referred to as the "tax clause"), and the equal protection clauses of the New Jersey and United States Constitutions.[1] Plaintiffs rely upon the fact that residents of affluent oceanfront municipalities similar to Sea Bright which educate their students through "sending-receiving" relationships are only required to pay the actual costs of that education.
The essential stipulated facts pursuant to which this matter was presented to the trial court are that Sea Bright's share of *228 the costs of the regional school district for the 1985-1986 school year equalled $12,302 per pupil whereas it would have been required to pay only $5,618 per pupil if it had been assessed pursuant to the formula applicable to sending-receiving relationships. In addition, the stipulated facts reflect that the amounts some sending districts pay to receiving districts based on per pupil costs are dramatically less than what they would be required to pay if they were constituent members of a regional district. For example, Cape May Point paid $3,757 per pupil in 1985-86 to send its students to the Lower Cape May Regional High School District based on a sending-receiving relationship whereas its share of education costs as a member of the regional district would have equaled $67,932 per pupil.
The trial court issued an oral opinion which rejected plaintiffs' challenges to the method of allocating the cost of regional school districts and entered judgment in favor of defendants. The court concluded that the method of funding regional school districts does not violate the tax clause because a regional school district is not a "taxing district" within the intent of that provision. Rather, the taxing district under our system of public school financing is the individual municipality, here Sea Bright, and plaintiffs do not assert any lack of uniformity of taxation within Sea Bright. The court also rejected plaintiffs' equal protection claims, concluding that there is a reasonable basis for the differences in the statutory methods of funding regional school districts and districts operating under sending-receiving relationships. The court noted that "a member of a regional school district ... has a voice in the operation of the school system both with respect to budget and the election of board members and [is] a participant in the school system" whereas "a sending municipality ... has no right of participation and [its] relationship to the receiving school is principally a contractual relationship, a payment for services." The court further noted that "[t]he Legislature and the Supreme Court in Robinson-Cahill have both determined that the most equitable basis of sharing school costs is on an equalized *229 ratable basis." In addition, the court ruled that "Sea Bright has no standing ... to contest the manner in which sending districts pay for their pupil costs."
We uphold the constitutionality of the statutory method of funding regional school districts and affirm the dismissal of the complaint.

I
The Tax Clause of the New Jersey Constitution provides:

Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value, except as otherwise permitted herein, and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district.
The purpose of this constitutional provision is "to assure that all taxable property within a municipality shall bear the same share of the tax burden of that municipality." Robinson v. Cahill, 62 N.J. 473, 505, 303 A.2d 273 (1973). Consequently, we held in Princeton Tp. v. New Jersey Dept. of Education, 163 N.J. Super. 389, 394 A.2d 1240 (App.Div. 1978) that the tax clause has no applicability to the method of allocation of costs among constituent municipalities of a regional school district:
The regional school district has no power to tax  a power which is limited to the municipalities themselves. Thus, the mere circumstance that the tax rates of municipalities within the district may differ because of the legislation is not a basis for a claim of a violation of the foregoing tax clause. The uniformity of tax rate is a constitutional imperative within the municipal taxing district  an entity which has the power to assess and collect taxes. [163 N.J. Super. at 397, 394 A.2d 1240].
We reject plaintiffs attack upon the method of financing regional school districts predicated upon the tax clause substantially for the reasons expressed in the Princeton Township opinion. Plaintiffs have not alleged that there is any lack of uniformity of taxation within Sea Bright or even within the Shore Regional district. Plaintiffs' claim is solely that Sea Bright's taxpayers are required to pay more for educating resident children in a regional school district than the taxpayers *230 of other municipalities which provide for the education of resident children through participation in sending-receiving relationships. The tax clause simply has no applicability to such a claim. Cf. Meadowlands Regional Development Agency v. State, 112 N.J. Super. 89, 117-122, 270 A.2d 418 (Ch.Div. 1970), aff'd o.b. 63 N.J. 35, 46, 304 A.2d 545 (1973) (tax sharing provisions of Hackensack Meadowlands Reclamation and Development Act are not subject to challenge under tax clause); Robinson v. Cahill, supra, 62 N.J. at 502-505, 303 A.2d 273 (funding of public education by means of local real property tax does not violate tax clause).

II
It has long been recognized that the equal protection clauses of the United States and New Jersey Constitutions allow the state great latitude in the fields of taxation and public finance. See, e.g., San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); Madden v. Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940); McKenney v. Byrne, 82 N.J. 304, 315-319, 412 A.2d 1041 (1980); Robinson v. Cahill, supra, 62 N.J. at 482-501, 303 A.2d 273; Bonnet v. State, 155 N.J. Super. 520, 527-530, 382 A.2d 1175 (App.Div. 1978), aff'd 78 N.J. 325, 395 A.2d 194 (1978). Thus, in rejecting an attack on equal protection grounds upon the use of local real property taxes to finance public education, the Supreme Court of the United States stated:
[T]he Justices of this Court lack both the expertise and the familiarity with local problems so necessary to the making of wise decisions with respect to the raising and disposition of public revenues. Yet, we are urged to direct the States either to alter drastically the present system or to throw out the property tax altogether in favor of some other form of taxation. No scheme of taxation, whether the tax is imposed on property, income, or purchases of goods and services, has yet been devised which is free of all discriminatory impact. In such a complex arena in which no perfect alternatives exist, the Court does well not to impose too rigorous a standard of scrutiny lest all local fiscal schemes become subjects of criticism under the Equal Protection Clause. [San Antonio Independent School District v. Rodriguez, supra, 411 U.S. at 41, 93 S.Ct. at 1301].
*231 The Supreme Court of New Jersey expressed similar views in rejecting a challenge under the state equal protection clause to the financing of public education through local real property taxes:
It is inevitable that expenditures per resident will vary among municipalities, resulting in differences as to benefits and tax burden. If this is held to constitute classification according to "wealth" and therefore "suspect," our political structure will be fundamentally changed. It has always been assumed that "taxes in different taxing districts in the State need not be uniform" as among the districts. [Robinson v. Cahill, supra, 62 N.J. at 494, 303 A.2d 273, citations omitted].[2]
Similarly, in rejecting a challenge under the federal and state equal protection clauses to the financing of welfare and judiciary-administration functions through local real property taxes, we stated:
All that is necessary is a rational relationship between the nature of the respective governmental functions involved and the political subdivisions to which the costs thereof are allocated. [Bonnet v. State, supra, 155 N.J. Super. at 528-529, 382 A.2d 1175].
We have no doubt that New Jersey's method of financing regional school districts is compatible with the equal protection clauses of the federal and state constitutions as interpreted in Rodriguez, Robinson and Bonnet. Plaintiffs do not contend that there is any inequality in the school tax burden of residents of Sea Bright compared with residents of the other constituent municipalities in the district. To the contrary, the objective of apportioning the costs of a regional school district among the constituent municipalities according to their property values is to impose substantially equivalent tax burdens for education upon all taxpayers of the district regardless of the municipalities in which they reside. Thus, the method of financing education in a regional school district is substantially the same as in a single municipality school district in that *232 school tax obligations depend upon the value of each taxpayer's real property. Consequently, we have no hesitancy in rejecting plaintiffs' thesis that residents of a municipality such as Sea Bright, which has higher property values and/or fewer children attending public school than other municipalities in the regional school district of which it is a part, have a constitutional right to pay only the actual costs of educating their resident children who attend public school. See Berkeley Tp. Bd. of Ed. v. Bd. of Ed. of Union Co., 40 N.J. Super. 549, 556, 123 A.2d 810 (Law Div. 1956), aff'd 23 N.J. 276, 128 A.2d 857 (1957) (observing that education is a public obligation, and that to hold that the Legislature could not apportion regional district costs among constituent municipalities on the basis of ratables rather than the number of children sent "would erase a concept of the distribution of public tax obligation quite essential to the wellbeing of the public school system and of the body politic.").
The reasonableness of the current system of financing regional school districts, and hence its compatibility with the equal protection guaranties of the federal and state constitutions, is not affected by the fact that other municipalities which do not have school systems and are not members of regional districts may educate their children pursuant to sending-receiving relationships under which they pay the receiving district the actual per pupil cost of education. There are significant distinctions between membership in a regional school district and a sending-receiving relationship. Residents of a regional district can vote in elections for school board members and school budgets whereas residents of a sending district have no electoral rights with respect to the operation of schools in the receiving district. In addition, schools may be located anywhere within a regional district whereas a receiving district would not locate its schools within a sending district. In short, a regional school district is a single political entity for the purpose of providing educational services to residents of its constituent municipalities, see Washington Tp. v. Burke, 178 N.J. Super. 325, 428 A.2d 1325 (App.Div. 1981), certif. den. 87 N.J. 413, 434 *233 A.2d 1089 (1981), whereas sending and receiving districts remain distinct political entities which enter contracts for educational services under the supervision of the Commissioner of Education.
In any event, it is the method of calculating payments by sending districts to receiving districts rather than the method of financing regional school districts which departs from the normal system of financing governmental services. Generally, the extent of tax obligations is a function of wealth rather than the value or cost of government services received by individual taxpayers or groups of taxpayers. Thus, the amount of income taxes are determined by a person's income, sales taxes by how much a person can afford to purchase and property taxes by the assessed value of a person's property. Cf. Robinson v. Cahill, supra, 62 N.J. at 492, 303 A.2d 273, (as to the taxpayer, all taxes "depend upon or reflect wealth except in the rare case of a head tax."). Therefore, any equal protection problems which may exist in the present system of public school financing relate to sending-receiving relationships rather than regional school districts. But since neither Sea Bright nor Shore Regional is a party to a sending-receiving relationship, plaintiffs are not affected by and thus lack standing to challenge the constitutionality of the method of calculating the amount sending districts are required to pay receiving districts. Cf. Crescent Park Tenant Assn. v. Realty Equities Corp. of N.Y., 58 N.J. 98, 107, 275 A.2d 433 (1971).
Accordingly, we affirm the judgment of the trial court upholding the constitutionality of the current system of financing regional public school districts and dismissing plaintiffs' complaint.
NOTES
[1] We note that school tax revenues are allocated differently depending on whether a regional school district is a "limited purpose regional district" or an "all purpose regional district." See the definition of "equalized valuation" in N.J.S.A. 18A:7A-3. However, since this difference in the allocation of school tax revenues is not material to the constitutional issues presented in this appeal, it is not discussed in this opinion.
[2] We note that the Court declined in its recent opinion in Abbott v. Burke, 119 N.J. 287, 390, 575 A.2d 359, 410 (1990) to rule on plaintiffs' state equal protection claim, electing instead to rest its decision solely on the Education Clause of the New Jersey Constitution. N.J. Const., Art. VIII, § 4, par. 1.