**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2478-18T4

BOROUGH OF SEA BRIGHT,
MONMOUTH COUNTY,

     Petitioner-Appellant,

v.

BOARD OF EDUCATION OF
THE SHORE REGIONAL HIGH
SCHOOL DISTRICT
MONMOUTH COUNTY,

     Respondent-Respondent.

_____

        Argued telephonically May 18, 2020 –
        Decided July 1, 2020

        Before Judges Ostrer, Vernoia, and Susswein.

        On appeal from the New Jersey Commissioner of
        Education, Docket No. 25-2/16.

        Vito Anthony Gagliardi argued the cause for appellant
        (Porzio Bromberg & Newman, PC, attorneys; Vito
        Anthony Gagliardi and Kerri A. Wright, of counsel and
        on the briefs; David Lawrence Disler, on the briefs).

Dennis Anthony Collins argued the cause for respondent Board of Education of the Shore Regional High School District, (Collins, Vella & Casello, attorneys; Dennis Anthony Collins, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Commissioner of Education (Geoffrey Nelson Stark, Deputy Attorney General, on statement in lieu of brief).

PER CURIAM

The Borough of Sea Bright appeals from a decision by the Commissioner of Education denying the Borough's request that the Commissioner authorize a public referendum to change the method for apportioning municipal appropriations to the Shore Regional School District (Shore Regional). Sea Bright contends the Shore Regional Board of Education (Regional Board) improperly refused to approve the referendum, depriving voters of their right under N.J.S.A. 18A:13-23 to revise the funding apportionment method. The Commissioner rejected the Borough's contention that the Regional Board was arbitrary, capricious, or unreasonable when it failed to vote on and approve a motion that had not been seconded. We have carefully reviewed the record in light of the governing legal principles and affirm the Commissioner's decision.

A-2478-18T4

## I.

Before we recount the facts and procedural history leading to this appeal, we provide historical background regarding how regional school districts are funded by participating municipalities. As we explained in <u>Borough of Seaside Park v. Commissioner of New Jersey Department of Education</u>, in 1931, the Legislature authorized the establishment of regionalized school districts using a "per pupil" funding mechanism. 432 N.J. Super. 167, 177 (App. Div. 2013). In 1975, the Legislature passed an amendment that altered the funding formula from a per pupil basis to one that is based on the equalized value of real estate. <u>Id.</u> at 176 (citation omitted). In 1993, the Legislature passed another amendment that allows regional districts to choose how appropriations are apportioned among member municipalities. Under the revised statute, which remains in force to this day, a regional district may be funded based on equalized property valuation, per pupil enrollment, or a combination of the two methods. <u>Id.</u> at 178 (citations omitted). That choice is exercised through voter approval at a regular or special election. <u>Id.</u> at 178 (citations omitted).

Shore Regional is comprised of Sea Bright, West Long Branch, Oceanport, and Monmouth Beach. The district was established in the 1960's at a time when the authorizing statute required that municipal appropriations be

3

apportioned on a per pupil basis. In 1975, Shore Regional's funding formula was changed to the equalized property valuation method as required by the statutory amendment adopted that year. The funding method for the school district has not changed since that time.

In 1990, Sea Bright challenged the constitutionality of requiring it to "contribute to the costs of the regional school district based upon its proportion of the total equalized value of property in the district, rather than the percentage of students who are Sea Bright residents." Borough of Sea Bright v. State Dep't of Educ., 242 N.J. Super. 225, 227 (App. Div. 1990). We rejected the Borough's challenge and held that the statutory framework for funding regional school districts is constitutional. Id. at 230–33.

Elected officials in Sea Bright continue to believe that the equalized property valuation apportionment method is unfair to the taxpayers they represent, forcing Sea Bright to bear a disproportionate share of the regional district's budget. On July 23, 2015, the Mayor of Sea Bright sent a letter to the Regional Board asking it to, "explore the possibility of modification of the school budget apportionment method." The Mayor offered to "share data, and help develop proposed funding formula modifications and language that would

4

seek to protect all of your members from harmful fluctuations in their percent shares of the school budget."

At the November 19, 2015, public meeting of the Regional Board, Sea Bright's sole Board member made a motion to "to have a vote on conducting a referendum to change the State funding formula."[1]  No other Board member seconded the motion, and therefore no vote was taken on it.

The Board went into closed executive session to discuss its response to the Sea Bright Mayor's July 23 letter.  The minutes note that, "[the Superintendent] indicated that a letter has been prepared and will be discussed by the Board."[2]

_____

[1]  We note that the motion, as described in the minutes, is phrased inartfully in that neither the Regional Board nor the voters in the member municipalities have the authority to change the "State funding formula."  Viewed in the context of the Mayor's July 23 letter, we infer that the Sea Bright Board member's intent was to call for a referendum pursuant to N.J.S.A. 18A:13-23 to change the funding apportionment method used by the Shore Regional School District.

[2]  The letter that was sent by the Superintendent to the Mayor is dated November 6, 2015.  We infer from the record that the letter had been drafted by the Superintendent before the meeting on November 19 and was discussed and approved in closed executive session before it was actually mailed to the Mayor. We do not address whether this process violated the Open Public Meetings Act, N.J.S.A. 10:4-6 to -21.

The Borough's petition to the Commissioner notes that the letter was not received by Sea Bright until November 29, 2015.  The Superintendent's failure to change the date before sending it to the Mayor thus appears to have been an

The letter to the Sea Bright Mayor from the Shore Regional Superintendent explained, "At this time, it is the consensus of the Shore Regional Board of Education not to explore the possibility of a referendum to reduce the apportionment of Sea Bright to the Shore Regional High School District."  The Superintendent's letter noted, "The Shore Regional School District does understand the plight of Sea Bright (as well as our other sending districts) in these tough economic times."  The letter further explained, "We have proposed, developed, and adopted a budget that has had no increase in each of the last three years.  This current school year budget has seen Sea Bright's apportionment decrease from 21% to 17% for a savings of $789 per year for the average assessed home.  That represents a 25% DECREASE in Sea Bright taxes from the previous year."

On February 3, 2016, Sea Bright filed a petition with the Commissioner of Education requesting that the Commissioner "authorize a public referendum to consider modification of the tax allocation method for Shore Regional to one based 100% on pupil enrollment."  The matter was referred to an Administrative Law Judge (ALJ).

---

oversight.  We do not believe the date of the letter is important to the issues raised in this appeal.

A-2478-18T4

On October 15, 2018, the A.L.J. issued an opinion concluding that there is nothing in N.J.S.A. 18A:13-23 that "mandates the Board to put the referendum on the ballot, in the absence of a vote by the Board." The ALJ reasoned, "[u]nder N.J.S.A. 18A:13-23 the role of the voting public is to approve or disapprove of the apportionment method placed on the ballot by the Board. Nothing mandates that a district place such a referendum on the ballot." The ALJ added, "[m]oreover, there was no need for a discussion of the reasons for the failure of the motion to receive even[] a second. Finally, since there was no second on the motion, it clearly failed." The ALJ thereupon granted the Regional Board's motion for summary decision and denied Sea Bright's motion for summary decision.

On January 14, 2019, the Commissioner of Education issued a written opinion, "concurr[ing] with the ALJ that the Board is entitled to summary decision." The Commissioner found, "this matter is limited to a determination as to whether the Board acted in an arbitrary, capricious or unreasonable manner by failing to place a referendum on the ballot; as the motion in question was never seconded, the Commissioner cannot find that the Board was arbitrary, capricious or unreasonable."

Sea Bright now appeals from the Commissioner's adjudicatory decision.

We begin our analysis by acknowledging general legal principles that govern the scope of our review. An appellate court "will disturb an agency's adjudicatory decision only upon a finding that the decision is 'arbitrary, capricious or unreasonable,' or is unsupported 'by substantial credible evidence in the record as a whole.'" Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 237–38 (App. Div. 2019) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579–80 (1980)). "The person challenging an agency action has '[t]he burden of showing that an action was arbitrary, unreasonable or capricious.'" Miller v. State-Operated Sch. Dist. of the City of Newark, Essex Cty., 461 N.J. Super. 215, 223 (App. Div. 2018) (alteration in original) (quoting McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002)), aff'd Miller v. State-Operated Sch. Dist. of the City of Newark, 240 N.J. 118 (2019).

"While [an appellate court] respect[s] an agency's expertise and will 'defer to the specialized or technical expertise of the agency charged with administration of a regulatory system,' [an appellate court is] 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" DiNapoli v. Bd. of Educ. of Twp. of Verona, 434 N.J. Super. 233, 236–

37 (App. Div. 2014) (citations omitted). "Statutory interpretation involves the examination of legal issues and is, therefore, a question of law subject to de novo review." Saccone v. Bd. of Trs. of Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (citations omitted).

III.

The statute at the heart of this case, N.J.S.A. 18A:13-23, governs the apportionment of appropriations to a regional school district.[3] The statute provides:

> The annual or special appropriations for regional districts, including the amounts to be raised for interest upon, and the redemption of, bonds payable by the district, shall be apportioned among the municipalities included within the regional district, as may be approved by the voters of each municipality at the annual school election or a special school election, upon the basis of:
>
> a. the portion of each municipality's equalized valuation allocated to the regional district . . .;
>
> b. the proportional number of pupils enrolled from each municipality on the 15th day of October of the prebudget year

---

[3] Another statute, N.J.S.A. 18A:13-23.3, prescribes preconditions to the modification of the manner for apportioning appropriations. At least one of the prerequisites must exist before the funding method may be modified by voters. For example, modification is permitted if "[t]en years have elapsed since the last school election in which the apportionment of costs was approved by the voters." N.J.S.A. 18A:13-23.3(a). It is not disputed that modification of the Shore Regional apportionment method would have been allowed under N.J.S.A. 18A:13-23.3.

in the same manner as would apply if each municipality comprised separate constituent school districts; or

c. any combination of apportionment based upon equalized valuations pursuant to subsection a. of this section or pupil enrollments pursuant to subsection b. of this section.

[N.J.S.A. 18A:13-23 (Emphasis added).]

Although this statute expressly authorizes the citizens of member municipalities to determine the funding apportionment method, it does not prescribe how the question gets to the voters by means of a ballot referendum. Notably, this statute does not authorize a member municipality, acting unilaterally, to petition the Education Commissioner to approve that a referendum question be placed on a ballot. This formulation stands in sharp contrast with another provision in chapter 13 of Title 18A that governs how a municipality may withdraw from a regional school district. See N.J.S.A. 18A:3-54 (providing in pertinent part, "[t]he municipal governing body . . . of the withdrawing district . . . may, within 30 days after the filing of the report by the county superintendent [pursuant to N.J.S.A. 18A:13-51 to -53], petition the commissioner for permission to submit to the legal voters of the withdrawing district and the remaining districts within the regional district the question whether or not it shall so withdraw").

A-2478-18T4

It is thus apparent that the Legislature knew how to authorize a public referendum that does not require action by the regional board of education but chose not to do so in N.J.S.A. 18A:13-23. We therefore agree with the Commissioner that the Regional Board was not obligated under N.J.S.A. 18A:13-23 to place the funding issue on the ballot at the request of one municipality.

The ALJ and Commissioner further concluded there is nothing in the text of N.J.S.A. 18A:13-23 that "mandates the Board to put the referendum on the ballot, in the absence of a vote by the Board." (Emphasis added). As a general proposition, an agency's or municipal body's inaction is subject to judicial review. See Caporusso v. N.J. Dep't of Health and Senior Servs., 434 N.J. Super. 88, 109 (App. Div. 2014) (reviewing agency inaction for unreasonableness, arbitrariness, or capriciousness (citing Gilliland v. Bd. of Rev., Dep't of Labor & Indus., 298 N.J. Super. 349, 354–55 (App. Div. 1997))); see also Balagun v. N.J. Dep't of Corr., 361 N.J. Super. 199, 202–203 (App. Div. 2003) (noting that agencies are "obliged . . . 'to tell [courts] why'" it came to its conclusion (quoting In re Valley Hosp., 240 N.J. Super. 301, 306 (App. Div. 1990))). We turn, then, to whether the "absence of a vote" because the motion was not seconded is a

form of inaction attributable to the Board that was, as Sea Bright contends, arbitrary, capricious and unreasonable.[4]

Our review of the minutes of the November 19, 2015 meeting reveals that the Regional Board follows Roberts Rules of Order.[5] In accordance with Roberts' Rules Article I, § 5, the Board was under no obligation to act on a motion that was not seconded. We do not believe that adherence to this basic principle of parliamentary procedure is arbitrary, capricious, or unreasonable. Accordingly, we conclude that the Commissioner was not arbitrary, capricious, or unreasonable in denying Sea Bright's petition on the grounds that the motion had not been seconded.

In reaching this conclusion, we emphasize that the Commissioner's task is to review the action, or inaction, of a regional board sitting as a corporate body, not to review decisions made by individual board members. We presume each

---

[4] We note that Sea Bright appeals from the decision of the Education Commissioner. Our review thus focuses on whether the Commissioner abused his discretion in granting the Regional Board's motion for summary disposition.

[5] According to the New Jersey School Boards Association website, "[m]ost [New Jersey school] boards follow Roberts Rules of Order, which describes how meetings are run, how motions and votes are taken and other procedures." School Board Basics: Frequently Asked Questions, New Jersey School Boards Association, https://www.njsba.org/news-information/parent-connections/school-board-basics-frequently-asked-questions/ (last visited June 8, 2020).

A-2478-18T4

member represents the interests of his or her municipality and its constituents. Sea Bright cites no authority for the proposition that individual board members are required to explain why they chose not to second a motion. We decline to extend the scope of administrative or judicial review to the decisions made by individual Board members to refrain from seconding a motion.

We add, finally, that even if we were to assume for purposes of argument that the failure to vote on the motion in these circumstances is a form of Board inaction that is subject to administrative and judicial review, the nature and scope of that review would be deferential. See Bd. of Educ. of Twp. of Colts Neck v. Bd. of Educ. of Freehold Reg'l High Sch. Dist., 270 N.J. Super. 497, 505 (App. Div. 1994) (commenting that legislative and quasi-legislative determinations enjoy the presumption of validity and are disturbed only upon a showing of arbitrariness, capriciousness, or unreasonableness (citations omitted)).

We have already noted that the decision to follow Roberts Rules is a matter vested in the discretion of regional boards and affords no reason for appellate intervention in this case. Furthermore, the Superintendent's letter explains why the Regional Board was denying the Mayor's request to revisit the

appropriations apportionment method.[6]  The letter specifically refers to a consensus "not to explore the possibility of a referendum."  Had there been a formal vote on the motion and had it been defeated, the explanation of reasons set forth in the Superintendent's letter would appear to be sufficient to show that the Board's decision was not arbitrary, capricious, or unreasonable.

To the extent we have not addressed them, any additional arguments raised by Sea Bright lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirm.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6]  It bears repeating that the Superintendent's letter to the Mayor expressly purports to reflect the "consensus of the Shore Regional Board of Education."